In the Matter of Franklin William Schraer and Gertrude Gwendolyn Schraer, Debtors.

Franklin William SCHRAER et al., Appellants,

v.

G. A. C. FINANCE CORPORATION, Appellee.

No. 18601.

United States Court of Appeals Sixth Circuit.

March 27, 1969.

Robert A. Goering, Cincinnati, Ohio, for appellants.

Lee B. Kasson, Jr., Cincinnati, Ohio, for appellee.

Before WEICK, Chief Judge, and O'SULLIVAN and PECK, Circuit Judges.

PECK, Circuit Judge.

Appellants have appealed to this Court from a judgment of the District Court which affirmed an order of a referee in bankruptcy. Appellants had filed a Wage Earner Plan in the bankruptcy court under the provisions of Chapter 13 of the Bankruptcy Act (11 U.S.C. § 1001 et seq.). That plan contained the following provision:

> "If creditor accepts this plan, as long as the plan it not in default, creditor agrees not to also collect payments on the listed debt from co-signers, co-makers or guarantors."

The debtors' creditors were duly notified of the fact that the proposed Wage Earner Plan was on file in the office of the District Court clerk, and the notice specifically stated that the plan was available for inspection by creditors. Obviously for the purpose of inducing creditors to examine the plan, the notice pointed out that Wage Earner Plans vary in content.

In due course notice of the first meeting of creditors was served, and pursuant thereto that meeting was held August 24, 1966. The schedules had listed the appellee as a creditor, and on that date it filed a proof of its claim of $304.65 *and specifically accepted appellants' proposed Wage Earner Plan.*

Appellants' obligation to the appellee was evidenced by a note, and one Floyd Ervin was a co-obligor thereon. Appellants' brief in this Court in a Statement of Fact agreed to by appellee, states:

"The creditor proceeded to collect monies on that same note from Floyd Ervin and harass him with frequent phone calls."

Appellants filed a motion directed to the Referee in Bankruptcy asking that appellee be restrained "from proceeding against the co-signer." It was from the District Court's affirmance of the Referee's order denying that motion that this appeal was perfected.

In his order the Referee points out that appellants, who are husband and wife, are employed respectively as a city fireman and as a cashier and waitress. It found the provision of the proposed Wage Earner Plan stipulating a semimonthly payment of $87.50 to the Trustee to be "feasible, in the best interests of the creditors," that the plan had been accepted as required by the Bankruptcy Act, and confirmed the plan. The Referee then specifically found that "[t]he payments to the trustee are being collected under a payroll deduction order to the husband's employer and *are not in default."* (Emphasis supplied.)

The briefs of the parties, which leave much to be desired, are not in agreement as to the question presented. For present purposes we therefore consider the question presented to be as stated in the opinion of the Referee in Bankruptcy:

"[Is appellee] precluded, by *virtue of having accepted the plan* herein containing the proviso above quoted, from collecting on its note indebtedness from the co-debtor Floyd Ervin so long as the debtors are not in default and the creditors are receiving periodic disbursements from the Chapter XIII trustee?" (Emphasis supplied.)

The emphasis in this statement of the question is upon the acceptance of the Wage Earner Plan containing the provision first above quoted, since appellants concede and we agree that in the absence of a provision of such nature the confirmation of an extension proposal under Chapter 13 does not automatically extend the obligation of persons who are secondarily liable. See In re Lancaster, 38 F. Supp. 318 (W.D.Mo.1941); United States for Use and Benefit of Chemetron Corp. v. George A. Fuller Co., 250 F.Supp. 649 (D.Mont.1965); Heckman v. National Bank of Washington, D.C.App., 201 A.2d 688 (1964); see also *Lee,* "Chapter XIII in Historical Perspective," Proceedings of Fourth Seminar for Referees in Bankruptcy 261, at 266.

In re Lancaster, *supra,* holds Section 16 of the Bankruptcy Act (11 U.S.C. § 34) applicable to Chapter 13 proceedings. That section provides that a discharge in bankruptcy will not alter the liability of a co-debtor or guarantor. This falls short, however, of holding that the creditor himself cannot alter the liability of the co-debtor or guarantor, and thus falls short of providing an answer to the present issue. In *Lancaster* the Court stated the question for review to be "whether a proceeding under Chapter 13 * * * referring to the general subject of wage earners' plans, should be expanded to relieve a surety or guarantor of a debtor from his liability." Thus the question there presented was just the converse of that with which we are here confronted, which is whether the creditors' volun-

tary relinquishment, for consideration, of his right to pursue the co-debtor or guarantor of a debtor is binding.

■ What must and what may be contained in a Wage Earner Plan under Chapter 13 is set forth in 11 U.S.C. § 1046. After establishing such requirements and indicating some permissible provisions, that section concludes by stating (11 U.S.C. § 1046(7)) that a plan "may include any other *appropriate* provisions *not inconsistent* with this chapter." (Emphasis supplied.) It is therefore necessary that a determination be made as to whether the provision here under examination is appropriate and not "inconsistent." While appellants make no specific contention in this regard, it was the position of the Referee that such an inconsistency existed. His position is that 11 U.S.C. §§ 1052(1) and 1057 combine to require an unsecured creditor who files a claim but rejects a proposed plan to be nonetheless bound thereby if it is adopted over his dissenting vote. However, while it is clear that he is bound by the adoption of a plan by a proper majority of the unsecured creditors and is entitled to receive dividends thereunder, that is not to say that his rights are in any way altered by the inclusion in the plan of a prohibition against pursuing co-debtors. Application of that provision to him clearly does not automatically accompany the restraint against his pursuit of the primary debtor and his entitlement to dividends, and the provision cannot be said to constitute an "inconsistency" on this score.

While both the Bankruptcy Act and its Chapter 13 have economic rehabilitation as their objective they offer alternate routes (as do certain other Chapters). In "straight" bankruptcy the desirable conclusion for the bankrupt is a discharge, and in the overwhelming majority of cases this follows the payment of only a dividend (if anything) to the creditor, whereas a Chapter 13 proceeding has as its goal the liquidation of the entire obligation, albeit at a decelerated rate. If bankruptcy is not involuntary, it may be voluntarily entered into by anyone (for practical purposes), whereas Chapter 13 is available only to the debtor who may propose an economically feasible program for the retirement of his obligations.

In determining whether to file a Wage Earner Plan the hard pressed debtor must take into account the position of his co-signers, who normally may be expected to be close relatives or friends. The hope of securing a commitment by creditors not to pursue such relatives and friends is both a natural and commendable desire of a debtor, and such acquiescence by creditors is doubtless frequently the deciding factor in the determination as to whether to proceed under Chapter 13. The creditor who is unwilling to look only to the Wage Earner Plan for payment need only reject or ignore the invitation to accept it in order to retain his rights against co-signers or co-makers. Rejection of the plan by a creditor (either by action or absence of action) may then become a factor which may affect the debtor's decision to continue with a plan which has received majority but not unanimous support. Thus, in addition to providing an orderly means of collecting his debt, the creditor by acceptance of a plan may in effect inform the debtor that he need not file bankruptcy proceedings or fear garnishment actions. Additionally, where a provision of the nature of the one we here consider is included the co-obligor may also be relieved of the necessity of entering bankrupcty.

■ The argument has been presented that the subject provision is inconsistent with 11 U.S.C. § 93(i). That section provides that "[w]henever a creditor whose claim against a bankrupt estate is secured * * * by the individual undertaking of a person, fails to prove and file that claim, that person may do so in the creditor's name, and he shall be subrogated to the rights of the creditor * * *." Thus under the present facts had appellants gone into bankruptcy and had appellee failed to prove and file its claim, Mr. Ervin could have done so in its name. This section obviously deals only

with situations where a creditor fails to prove and file a claim (Westinghouse Elec. & Mfg. Co. v. Fidelity & Deposit Co., 251 Mass. 418, 146 N.E. 711 (1925)), and has no application here. We are not required to determine whether it has application in Chapter 13 proceedings, but assuming such application it is readily apparent that no problem would be presented by the inclusion in a plan of the controverted provision. Under Section 93(i) the secondarily obligated person may file a claim, but his rights extend no further. Specifically, he is given no right to agree to a Wage Earner Plan and no "inconsistency" within the meaning of 11 U.S.C. § 1046(7) could exist.

■ Apparently recognizing the difficulty of demonstrating that the plan in question is "contrary to the entire spirit of Chapter XIII," the appellee devotes virtually its entire brief to the argument that the provision with which we are concerned is "inconsistent with or contrary to the law of Ohio." We do not find the argument persuasive. Appellee states: "No matter what agreement for an extension of time is made between the bankrupt and the creditor, under the law of Ohio the creditor's right to pursue the co-signer is not, and cannot be, affected in the slightest. Apparently, even if the creditor had agreed to discharge the co-signer entirely in the plan, this would not affect the creditor's right to collect from the co-signer." These conclusions are based on appellee's reading in pari materia of certain sections of the Ohio Revised Code.*

The first statute cited by appellee is Ohio Revised Code, Section 1779.11 which provides that "[i]n reference to creditors and to joint debtors of the individual" ORC §§ 1779.09 and 1779.10 shall apply where joint debtors compound or compromise "for their joint indebtedness." Read in the light of that section, Section 1779.09 provides that when a debtor makes a compromise with a credi-

tor it will constitute "a full and effectual discharge to the debtor who makes it, *but to him only,* from all liability to the creditor with whom it is made, according to its terms." (Emphasis supplied.) The first sentence of ORC § 1779.10 follows in the same vein. It provides that such a compromise "shall not discharge [joint debtors] or impair the right of the creditor to proceed against [joint debtors] who have not been discharged." These sections clearly preserve a creditor's rights against sureties, guarantors or co-signers where the primary debtor secures a personal discharge without making provision as to them, but just as clearly these sections do not purport to apply where such provision is made a part of the compromise instrument. Differently stated, these sections did not preclude the right of appellants to include in their Chapter 13 plan protection for their co-obligor Floyd Ervin, from whom appellee in its acceptance of the plan agreed not to collect payments. ORC § 1303.72 is similarly without application, as are the Ohio cases cited by appellee, since the appellee expressly assented to the alteration of its rights.

We hold that the Wage Earner Plan proposed by appellants, accepted by the creditors (including the appellee), and under which appellee accepted payments, was properly composed as provided by 11 U.S.C. § 1046, and that the provision under which creditors (including the appellee) agreed not to collect payments from co-signers, co-makers or guarantors was appropriate in the circumstances and not inconsistent with Chapter 13, and that that provision was not inconsistent with or rendered invalid by the law of Ohio.

In accordance with the foregoing, the final order from which this appeal was perfected is reversed and the cause is remanded to the District Court for further proceedings not inconsistent herewith.

* The law of Ohio is relevant because the loan was made in Ohio, appellee is located there, and the parties applied for the loan and signed the note in the State of Ohio.