**In re Stanford Lindsey BRITTS and Christine Lee Britts, Debtors.**

**OLD PHOENIX NATIONAL BANK, Plaintiff,**

v.

**Stanford Lindsey BRITTS and Christine Lee Britts, Debtors-Defendants.**

Bankruptcy No. 581–848.
Adv. No. 581–0903.

United States Bankruptcy Court,
N. D. Ohio.

March 5, 1982.

Michael Moran, Cuyahoga Falls, Ohio, for defendant.

Debbie S. Kay, Medina, Ohio, for plaintiff.

Arthur Axner, Akron, Ohio, for debtors.

## FINDING AS TO VACATION OF STAY

H. F. WHITE, Bankruptcy Judge.

Based upon the evidence and testimony as presented at the pre-trial held on the 5th day of January 1981, the Court hereby makes the following Finding of Fact.

### FINDING OF FACT

1. The Debtors, Stanford Lindsey Britts and Christine Lee Britts, filed a Chapter 13 proceedings on May 20, 1981.

2. The Debtors scheduled Old Phoenix National Bank as an unsecured creditor in the amount of $12,283.92.

3. Archer J. Bailey, father of Christine Lee Britts, was scheduled as a co-maker on the debt due to Old Phoenix National Bank. The Plan of Arrangement as filed provided for the payment of 25 cents on the dollar to all creditors holding allowed unsecured claims. The Plan further provided in paragraph 7:

> The Debtor hereby proposes that if any of the creditors accept said Plan or receive any money from said Plan, that in that event the said creditor shall waive its right to collect its account against any other cosigners, comakers, co-obligers, or co-guarantors of said Debtor. The creditors agree that in the event its claim is paid in full by Debtors then said claim will also be paid in full for any co-signer, co-maker, co-obliger, or co-guarantor.

4. Linda Lee Klett, a deputy clerk of this court, did on the 2nd day of June 1981 give notice to all creditors of the filing of the Plan of Arrangement and that the First Meeting of Creditors would be held on June 25, 1981 and that the confirmation of the plan would take place on the 2nd day of July 1981. Only the Summary of the Plan was included in the notice to creditors which set forth the following:

> The debtors intend to pay the secured creditor holding mortgage on residence the monthly payments separately and apart from the Plan, and they intend to surrender the motor vehicle to the other secured creditor to cancel that debt. The unsecured creditors will be paid 25¢ per dollar owed on provable and allowed claims, the debtor will pay $30.00 per week towards payment of the unsecured

debts, with the same to be deducted by his employer and paid to the Trustee.

5. The Creditor, Old Phoenix National Bank, was not aware of the provision of paragraph 7 of the plan that if they accepted said Plan they would waive their rights to collect the accounts against any co-signer or co-maker.

6. The First Meeting of Creditors was held on June 25, 1981 and the creditor, Old Phoenix National Bank, attended the meeting and was informed by Jerome Holub, Chapter 13 Trustee, of the provisions of the Plan.

7. The Debtors were instructed to file an amended budget which was executed by Debtors on July 16, 1981 and filed with the Court on the same date.

8. The confirmation hearing was scheduled for July 2, 1981 and was adjourned to July 16, 1981.

9. The creditor, Old Phoenix National Bank, filed a Proof of Claim in which they indicated a net pay-off balance on July 10, 1981 in the amount of $9,250.62 and the unpaid balance including interest and late charges as of July 16, 1981 amounted to $11,761.20. Attached to their unsecured claim was a note signed by the Debtor, Stanford L. Britts, and a co-maker, Archer J. Bailey. The Creditor filed the claim on a Proof of Claim Form BOF 13–9 (Rev. 10/79) and in paragraph 13 rejected the Debtor's Plan on July 16, 1981.

10. The Court confirmed the Plan of Arrangement on July 23, 1981; however, the order confirming the plan of arrangement was not filed with the Court or docketed until October 13, 1981.

11. On November 19, 1981 the Plaintiff, Old Phoenix National Bank, filed a complaint to vacate the stay against the co-debtor, Archer J. Bailey, and service was made upon the co-maker, Archer J. Bailey.

12. The Trustee has not made any disbursements to the Old Phoenix National Bank, creditor, under the Plan of Arrangement.

## ISSUE

May a debtor by the provisions of his Plan in a Chapter 13 bind a nonassenting creditor as to a stay of action against a co-debtor beyond the provisions of 11 U.S.C. § 1301 etc.

## LAW

The provisions of Section 1301 of the Bankruptcy Code are new to the statutory scheme of Chapter 13 as found in the Bankruptcy Reform Act of 1978, having no comparable counterpart in the old Bankruptcy Act. In substantive part, it provides:

> Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor . . . 11 U.S.C. § 1301(a).

The automatic stay of action against a co-debtor is subject to modification under certain circumstances, as stated in Section 1301(c) of the Code:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—. . .
>
> (2) The plan filed by the debtor proposes not to pay such claim . . . 11 U.S.C. § 1301(c)

The legislative history for this Code provision makes it clear that if the debtor proposes not to pay a portion of any debt under his Chapter 13 plan, then the stay against co-debtor pursuit can, and perhaps must, be lifted to that extent. *In re Betts*, 8 B.R. 799 (Bkrtcy.1981), *citing* H.R.Rep.No.595, 95th Cong., 1st Sess. 122 (1977), U.S.Code Cong. & Admin.News 1978, 5787.

Absent any other factors, this Court would be constrained to hold that the stay of action against a co-debtor provided for by Section 1301 of the Bankruptcy Code must be modified in this case to the extent that the composition plan confirmed in this case proposes not to pay, in full, the claim of Old Phoenix National Bank. The stay

would thus be modified to allow the pursuit of the co-debtor, Archer J. Bailey, to the extent of 75 percent of the Old Phoenix claim. However, the provision for accepting creditors' waivers of rights against codebtors of the debtor is a complicating factor.

The debtors include this clause under the auspices of Section 1322(b)(10) of the Bankruptcy Code which states that the plan may "include any . . . provision not inconsistent with this title." 11 U.S.C. § 1322(b)(10). Prior case law has held that a clause such as this is not inconsistent with the spirit of Title 11, since the preclusion of creditors proceeding against the debtor's co-obligors is a protective feature which encourages the debtor to file a Chapter 13 rather than a straight bankruptcy and indeed this protection may be crucial in the formulation and execution of many Chapter 13 plans. See *In re Betts, In re Weaver,* 8 B.R. 803 (Bkrtcy.1981), *Schraer v. G. A. C. Finance Corp.,* 408 F.2d 891 (6th Cr. 1969).

■ This Court, however, finds that any extraneous protection of co-debtors by the plan beyond the provisions of Section 1301 of the Bankruptcy Code is inconsistent with the spirit of the Bankruptcy Code, and in particular with the intent of Section 1301.

The Bankruptcy Reform Act was enacted to modernize protection to persons who have economic problems. Hopefully, by proceeding through a bankruptcy or Chapter 13, a debtor will realize and reflect upon the economic mistakes he made in the past and the law will grant him a sufficient time period for him to take advantage of his "fresh start". S.Rep.No.95–989, 95th Cong., 2nd Sess. 76, *reprinted in* [1977] U.S.Code Cong. & Ad.News 5787, 5799.

■ This is the purpose in which the Bankruptcy Code, including Section 1301, was enacted. But, in order to qualify for this favorable treatment, one must be granted an order for relief by the court. (See 11 U.S.C. Sections 301, 302, 304.) A debtor's co-debtors, unless they have also filed for relief, are not entitled to be protected under the Bankruptcy Code except as specified under Section 1301.

Congress enacted Section 1301 because under the Bankruptcy Act there was no comparable provision and creditors would indirectly threaten the debtor with action against the debtor's co-obligors, who were normally the debtor's relatives or friends, in order to receive favorable treatment by the debtor over the debtor's other creditors. *In re Betts,* 8 B.R. at 801. It was in this context that the decision in *Schraer* was written, which upheld the legality of the co-debtor protection clause.

But under the Bankruptcy Code protective clauses would not be necessary in the Plan to protect co-makers from the debtor's creditors because Congress included that protection within the Bankruptcy Code itself. Congress stated the purpose of including Section 1301(a) in the Bankruptcy Code as being:

> . . . to protect a *debtor* operating under a Chapter 13 . . . by insulating him from indirect pressures from his creditors executed through friends or relatives that may have co-signed an obligation of the debtor. H.R.Rep.No.595, 95th Cong. 1st Sess. 122 (1977), U.S.Code Cong. & Admin.News at 6082. (emphasis added)

Thus, such clauses in the debtor's Plan appear to be inconsistent with the spirit of the Bankruptcy Code. Furthermore, such clauses could be inconsistent with the Code in that they prevent the creditor from getting the benefit of his bargain, i.e. to be paid on time from either the principal debtor or the co-debtor, in contravention of Congress' stated intent in enacting Section 1301, which was:

> To limit the protection [given to the debtor under § 1301] to ensure that the creditor involved does not lose the benefit of his bargain he made for a co-signor. The creditor's . . . substantive rights are not affected. H.R.Rep.No.595, 95th Cong. 1st Sess. 122 (1977), U.S.Code Cong. & Admin.News at 6082.

Creditors actually under 11 U.S.C. Section 1301 lose no substantive rights to proceed against the co-debtor. The benefit Congress intended to grant the co-debtor was to delay the creditor in asserting his

rights under the contractual relationship until the debtor had an opportunity to formulate his Plan proposed under Section 1301(c). Any terms beyond this would be in contravention of Congress' intent to not affect the substantive rights of the creditor to proceed against the co-debtor, and would in effect grant a co-debtor who has not filed any action under Title 11 the protection of the Bankruptcy Code.

■ Even assuming a clause which limits a creditor's right to proceed against the co-debtor is not inconsistent with the Bankruptcy Code, such a clause can only bind a creditor who specifically adopts the debtor's proposed plan. In *Schraer*, a clause similar to the clause in this case was held to be binding and enforceable as to a creditor, but only because that creditor specifically accepted the debtor's plan. The court went on to say that:

> The creditor who is unwilling to look only to the Wage Earner Plan for payment need only reject or ignore the invitation to accept it in order to retain his rights against co-signors or co-makers. *Schraer* 408 F.2d at 894. See also *In re Betts*, 8 B.R. at 800.

■ Debtor in the present case claims that by not filing a timely rejection of the plan, the creditor was deemed to have accepted the Plan and all of the terms contained within. Debtor's basis for this claim is apparently Bankruptcy Rule of Procedure 13–202(a) which states that if the creditor does not accept or reject a plan before the conclusion of the first meeting of creditors, he is deemed to have accepted it. This claim has three serious drawbacks which must cause it to fail.

First, the comment which follows this rule states that under the Code, no consent or rejection is required of unsecured creditors. Secondly, the holding of *Schraer* indicates that a deemed acceptance is not enough to bind a creditor to the terms of such a clause, it must be an affirmative, specific acceptance. Thirdly, even if the rule is found to be applicable in this case, Old Phoenix National Bank was not aware of the clause in question until the day of the first meeting of creditors, which vio-

lates the notification provision of Rule 13–204(a)(1). *See also* Advisory Committee's Notes accompanying text of Rule 13–204.

Finally, the debtor contends that Old Phoenix National Bank accepted money under the Plan and is therefore estopped from denying the validity of the waiver clause. However, the Court's Finding of Facts specifically states that Old Phoenix National Bank has not received any money under the Plan.

Based upon the foregoing, the Court determines that the relief requested by Old Phoenix National Bank in its complaint is warranted and such relief is granted in that the stay of action against Old Phoenix National Bank should be vacated and Old Phoenix National Bank is allowed to commence action against Archer J. Bailey to the extent of seventy-five percent of its claim of Eleven Thousand Seven Hundred Sixty-One and 20/100 Dollars ($11,761.20) that the Debtors do not propose to pay under the plan, or to the extent of Eight Thousand Eight Hundred Twenty and 90/100 Dollars ($8,820.90).