David A. Searles (argued), Philadelphia, Pa., for appellants.

Jonah D. Levin (argued), Norristown, Pa., for appellee.

**In re Fred J. SZOSTEK, Denise M. Szostek Appellants.**

**No. 89–1324.**

United States Court of Appeals, Third Circuit.

Argued Sept. 5, 1989.

Decided Oct. 12, 1989.

Before MANSMANN, NYGAARD and ALDISERT, Circuit Judges.

OPINION OF THE COURT

MANSMANN, Circuit Judge.

Debtors in bankruptcy here appeal from the decision of the district court which granted a creditor's motion to revoke confirmation of a chapter 13 plan. We are asked to determine whether the secured creditor may be deemed to have accepted the plan by failing to object to it timely or, if the bankruptcy court's failure to apply

provisions of 11 U.S.C.A. § 1325(a)(5)(B)(ii) (West 1979), relating to present value constitutes grounds for vacating the plan. In addition, we must determine whether the trustee in bankruptcy and the bankruptcy court are independently required to verify that a Chapter 13 plan meets all statutory requirements or whether they may rely on the lack of objection thereto.

■■■ We conclude that the district court erred by reversing the bankruptcy court's confirmed action of the debtor's plan. Although the present value provision found in § 1325(a)(5)(B)(ii) was not applied by the bankruptcy court in determining the amount of the creditor's claim, this does not constitute grounds for vacating a confirmed plan where the creditor has not timely objected to the plan. We further conclude that, although prior to confirmation the bankruptcy court and trustee do have a responsibility to verify that a Chapter 13 plan complies with the Bankruptcy Code provisions, after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code. Therefore, we will reverse the order of the district court and remand for the issuance of an appropriate order reinstating the judgment of the bankruptcy court.

### I.

On July 7, 1987, Fred and Denise Szostek filed a Chapter 13 bankruptcy petition. On August 3, 1987, the bankruptcy court issued an order scheduling the meeting of creditors, establishing a deadline for objections to the Szosteks' Chapter 13 plan and scheduling a hearing on confirmation of the plan for December 15, 1987. Pursuant to Bankr.Rules 3020(b) and 9014, the court's order stated that any objections to the confirmation of the debtor's plan shall be filed no later than ten days before the confirmation hearing. The filing deadline was thus December 5, 1987.

The Kissell Company ("Kissell"), creditor and appellee, received notice of the deadline for filing objections. On August 18, 1987, Kissell filed a secured claim, based on a purchase money mortgage in the amount of $29,242.41. A few weeks later, on September 8, 1987, the Szosteks filed an objection to Kissell's claim on the ground that Kissell had violated the Truth in Lending Act ("TILA"), 15 U.S.C.A. § 1601 *et seq* in the course of the residential loan transaction and, therefore, claimed they were entitled to a $1,000 recoupment. On the same day, the Szosteks also filed their First Amended Chapter 13 Plan, which proposed payments totalling approximately $40,000.00. The plan did not, however, provide for interest to be paid on allowed secured claims, *i.e.*, present value.[1] A hearing on the Szosteks' objection to Kissell's claim was scheduled for December 15, 1987, the same date as the confirmation hearing.

On October 14, 1987, Kissell filed an amended proof of claim which was in the same amount as previously requested, $29,242.41. The Szosteks subsequently filed an amended objection to Kissell's claim on the ground that the value of the mortgage exceeded the value of the home and that the secured claim had to be bifurcated into two portions, secured and unsecured. The Szosteks sought both a determination of the amount of Kissell's security interest pursuant to 11 U.S.C.A. § 506(a), (d), as well as the relief pursuant to the TILA.

Szosteks' counsel served a copy of Szosteks' First Amended Plan upon Kissell's counsel on November 16, 1987. Sometime

---

1. The meaning of present value was explained by the bankruptcy court in *In re Fisher,* 29 B.R. 542 (Bkrtcy.D.Kan.1983) as follows:

    "Present value" or the "time value of money" is not a legal concept, but rather it is a term of art in the financial community. It simply means that a dollar received today is worth more than a dollar to be received in the future. To compensate the creditor for not receiving its money today, the debtor is charged an additional amount of money. The charge is based on a rate of interest called a "discount rate." The discount rate is used to calculate how much the creditor should be paid so it will have the same amount of money in the future as it would have had if it did not have to wait to be paid.
    29 B.R. at 543.

prior to December 15, 1987,[2] the attorneys for the Szosteks and for Kissell had a conversation in which Kissell's counsel requested a continuance of the hearing on Szosteks' objection to Kissell's claim so that an appraisal of Szosteks' property could be obtained. During this conversation, Kissell's counsel did not request a continuance of the confirmation hearing on the plan, which was also scheduled for December 15, 1987.

Kissell's counsel later testified that he assumed that Szosteks' counsel had agreed to both postponement of the hearing on Szosteks' objection to Kissell's claim and to postponement of the confirmation hearing. Szosteks' counsel later testified that he understood the continuance request was only for the hearing on Szosteks' objection to Kissell's proof of claim.[3]

On December 15, 1987, the bankruptcy court held the confirmation hearing as scheduled at which the Szosteks appeared, but Kissell did not. Since no objections to the plan had been filed, upon recommendation of the standing Chapter 13 trustee, the Szosteks' First Amended Plan was confirmed by the court on December 15, 1987. The confirmed plan provided for payments as follows: (1) $4,003.00 to the trustee; (2) payment in full on Kissell's allowed secured claim; and, (3) the balance to the holders of allowed unsecured claims. Subsequently, the confirmed plan provided for 100% payment on the unsecured claims. On the same date, the hearing on the Szosteks' objection to Kissell's proof of claim was continued to January 25, 1988.

By letter dated December 16, 1987, Kissell's counsel confirmed a telephone call to him from Szosteks' counsel, which advised that the hearing on the Szosteks' objection to Kissell's proof of claim had been continued to January 25, 1988. (The actual date of the telephone call is not noted in the appendix.)

Three days after confirmation of the plan and thirteen days after the deadline for filing objections to the plan, Kissell filed an objection to the Szosteks' First Amended Chapter 13 Plan and an answer to the Szosteks' objection to Kissell's proof of claim. Kissell objected to Szosteks' plan on the grounds that it failed to provide adequately for payment in full of Kissell's secured claim, i.e., it did not provide for present value. No responsive pleading by the Szosteks was required under the Bankruptcy Rules.

The hearing on Szosteks' objections to Kissell's proof of claim was held On January 25, 1988. It was at this hearing that Kissell's attorney first learned that the Szosteks' plan had been confirmed. It appears from the record that Kissell's attorney took no action to challenge confirmation of the plan at that time. Consequently, no appeal was filed within ten days of the plan confirmation as required by Bankr.Rule 8002(a), nor did Kissell's attorney seek to file any appeal after learning of the confirmed plan on January 25, 1988.

On March 21, 1988, the bankruptcy court issued a memorandum and order determining Kissell's secured claim to be $25,110.00 and its unsecured claim to be $3,132.41. The March 21, 1988 order was, in part, based upon the parties' agreement that Kissell had violated the TILA and that a $1,000.00 recoupment was appropriate. The court apportioned the recoupment between Kissell's secured and unsecured claims. As part of its order, the bankruptcy court specifically noted that any challenge to the December 15, 1987 confirmation of the Szosteks' plan was not an issue before the court.

2. The date is not clear from the record.

3. The bankruptcy court noted in its opinion that the attorneys' stipulation to continue the hearing date was not filed with the Clerk of the Bankruptcy Court, nor was there an order of the court allowing the stipulation.

At oral argument, counsel for Kissell explained that he was under the impression that the court could not enter a confirmation order if there was a question as to the amount of a claim, and further, he thought that the confirmation hearing was to be continued. We caution counsel that all stipulations or agreements as to continuances of bankruptcy proceedings should be filed with the court to avoid any misunderstandings such as apparently occurred here.

As a result of prevailing on the TILA objection, Szosteks' counsel filed a motion for attorneys fees pursuant to 15 U.S.C.A. § 1640. Kissell opposed the motion on the ground that, as part of the parties' agreement that there was a TILA violation, Szosteks' counsel had agreed to waive attorneys fees.

On May 20, 1988, four months after learning of the plan's confirmation, Kissell filed a motion seeking dismissal of the debtors' petition, revocation of confirmation under 11 U.S.C.A. § 1330, and alternatively, modification of the plan or relief from the automatic stay.[4] Kissell's motion was based on alleged fraud by the Szosteks in obtaining confirmation of the plan and the contention that the plan should not have been confirmed because it did not provide for paying Kissell interest on its secured claim, *i.e.*, present value.

The bankruptcy court held two hearings in June of 1988 on Szosteks' motion for attorneys fees and on Kissell's motion to dismiss, revoke confirmation, and modify the plan. On December 6, 1988, the bankruptcy court awarded attorneys fees and costs under TILA in the amount of $1,009.50 and denied Kissell's motion to dismiss, revoke confirmation, and modify the plan, 93 B.R. 399 (Bkrtcy.E.D.Pa.1988). The bankruptcy court held that Kissell's allegation that confirmation of the plan was procured by fraud was not supported by the evidence and thus, the plan was not revocable under § 1330(a).

A timely appeal was taken to the United States District Court for the Eastern District of Pennsylvania where, although the district court affirmed the finding that there was no fraud, the court reversed the bankruptcy court's order denying Kissell's motion to dismiss, revoke confirmation and modify the plan. The district court vacated confirmation of Szosteks' Chapter 13 plan and remanded the case on the basis that neither the bankruptcy court nor the trustee had fulfilled its independent obligation of insuring that the Szosteks' plan complied with 11 U.S.C.A. § 1325(a)(5). However, the district court affirmed the bank-

ruptcy court's award of attorneys fees. The Szosteks appeal.

Since the district court sits as an appellate court in reviewing cases from the bankruptcy court, the district court is neither a finder of fact, nor is any more qualified than the court of appeals to evaluate the decision of the bankruptcy court. Consequently, our review on appeal from the district court in a bankruptcy case is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981).

### II.

We are faced here with a clash between two seemingly divergent policies involved in the Bankruptcy Code. On the one hand is the policy of finality, as evidenced by § 1327, which provides that, absent fraud, confirmation of a debtor's plan binds both the debtor and the creditors. Under § 1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation. On the other hand is the language of § 1325(a) which provides that a court shall confirm a plan which meets the conditions listed in that section. The conflict resulted here when a confirmation order was entered for a plan which did not provide for the calculation of present value of the creditor's claim, a requirement of § 1325(a)(5)(B)(ii). Thus, we must determine whether, in the absence of fraud, the failure of a creditor to attend the confirmation hearing, object timely to the plan, or appeal the order of confirmation, regardless of the reason, precludes the creditor from obtaining full recovery of the present value of its claim when such was not provided for in the confirmed plan.

### A.

To understand the tension between the code sections, we must first look at one of the relevant portions of the Bankruptcy Code. We find that 11 U.S.C.A. § 1327(a) provides as follows:

Effect of confirmation

---

**4.** Kissell later withdrew its request for relief from the automatic stay.

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan.

11 U.S.C.A. § 1327 (West 1979). One leading commentator has recently interpreted this section as follows:

it is quite clear that the binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with sections 1322 and 1325 of the Bankruptcy Code. For example, a creditor may not after confirmation assert that the plan was not filed in good faith, ... that the creditor should have been paid interest; that the debtor is ineligible for chapter 13 relief; or that the plan is otherwise inconsistent with the Code in violation of Section 1322(b)(10) or section 1325(a)(1).

5 Collier on Bankruptcy, § 1327.01 (5th ed. 1988).[5]

The finality of confirmed plans was discussed by the Supreme Court in *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). At issue in *Stoll* was a corporate debtor's plan which included cancellation of a guaranty to pay a bond. Prior to confirmation, there had been no objections to the plan. After confirmation, however, the creditor filed an action in state court to recover on the guaranty. The Supreme Court held that the finality of the bankruptcy confirmation order barred the creditor from litigating its claim.

Several of our recent cases have followed this rationale. For example, in *United States ex rel. I.R.S. v. Norton,* 717 F.2d 767 (3d Cir.1983), we held that the Internal Revenue Service (I.R.S.) could not retain

overpayment of a debtor's taxes as security on the debt to the I.R.S. when the I.R.S. did not object to the debtor's plan, because, upon confirmation, the I.R.S. became bound by the plan's provisions. Similarly, in *In re Penn Central Transportation Company,* 771 F.2d 762 (3d Cir.1985), we held that a creditor who received notice of a railroad reorganization and failed to participate in the proceedings was barred from litigating an antitrust claim. We stated that

the purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

*In re Penn Central,* 771 F.2d at 767, *citing Duryee v. Erie R.R. Co.,* 175 F.2d 58, 61–63 (6th Cir.), *cert. denied,* 338 U.S. 861, 70 S.Ct. 103, 94 L.Ed. 527 (1949).

Other courts of appeals have upheld the binding effects of a bankruptcy confirmation order. A creditor was bound by a plan that released the third party guarantor in *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987). The court stated that, regardless of whether the plan provision to release the guarantor was inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it was nonetheless included in the plan. Since the plan was confirmed without objection, nor

---

**5.** Kissell also argued for the application of 11 U.S.C.A. § 1330(a), allowing for revocation on the basis of fraud. Bankruptcy Code 11 U.S. C.A. § 1330(a) provides as follows:

Revocation of an order of confirmation

(a) On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a

hearing, the court may revoke such order if such order was procured by fraud.

Both the bankruptcy court and the district court held that there was no fraud in securing the confirmation of the Szosteks' plan. We note that Kissell has abandoned its claim that the Szosteks' confirmed plan was procured by fraud. Clearly, there can be no revocation of the plan based on § 1330(a).

was an appeal taken, the plan was not reviewable on its merits. 815 F.2d at 1050.

A case with facts analogous to the case here is *Neeley v. Murchison,* 815 F.2d 345 (5th Cir.1987). In *Neeley,* the creditor filed his objection to dischargeability ten days after the time limitation period. The bankruptcy court held that when the creditor's attorney erroneously relied on both oral statements by the bankruptcy court's clerks as to time limitation and the blank space on a form received from the bankruptcy clerk as to the deadline to file objections, his reliance was misplaced because the bankruptcy rules plainly stated the time deadline. The bankruptcy court found the creditor's objection time-barred. The Court of Appeals for the Fifth Circuit affirmed. 815 F.2d at 347.

Similarly, in *Matter of Gregory,* 705 F.2d 1118 (9th Cir.1983), the Court of Appeals for the Ninth Circuit held that the failure to raise an objection at the confirmation hearing, or to appeal from the confirmation order, should preclude an attack on the plan or any provision therein as being illegal in a subsequent proceeding. The court of appeals noted that the creditor's treatment seemed "grossly unfair" because of a zero-payment plan provision where the debtor, a convicted embezzler, owed $17,000 to his employer. Nonetheless, the court concluded, if a creditor ignores the bankruptcy proceedings, he does so at his peril. 705 F.2d at 1123.

Kissell relies on one case, *In re Britts,* 18 B.R. 203 (Bkrtcy.N.D.Ohio 1982), to argue that we have the power to grant relief notwithstanding the confirmation of a plan. The bankruptcy court in *Britts* held that, even if a clause staying a creditor's pursuit of a co-debtor is not inconsistent with the Bankruptcy Code, such clause can only bind the creditor who specifically adopts the proposed plan. The creditor in *Britts* was permitted to proceed against the co-debtor, even though the plan had been confirmed with a contrary provision.

*Britts* can be distinguished from the case here in several ways. First, *In re Britts* involved claims against a co-debtor. Second, the creditor was not aware of the clause which limited its rights against the co-debtor until the day of the creditors' meeting because the clause was not included in the notice. The court found that this failure violated the notice provisions of the Code. Additionally, *Britts* has been criticized by the Bankruptcy Court for the Eastern District of Pennsylvania for the failure of the *Britts* court to discuss the final effects of 11 U.S.C.A. § 1327. *See In re Bonanno,* 78 B.R. 52, 55 (Bkrtcy.E.D. Pa.1987).

Here, the district court recognized well settled law that a confirmed plan is final. However, the court, relying on *In re Chinichian,* 784 F.2d 1440 (9th Cir.1986), stated that it is equally well established that a violation of 11 U.S.C.A. § 1325(a) can, under certain circumstances, warrant vacating a confirmation order. But *Chinichian* is distinguishable from the Szosteks' case in several aspects. First, in *Chinichian* there was not a final confirmation of the plan. The bankruptcy court had only partially confirmed the plan pending a later ruling on a proposal to reject a land sale contract. Second, the bankruptcy court determined the debtor's plan had been filed in bad faith and subsequently rejected the plan. On appeal, the Court of Appeals for the Ninth Circuit held that a partial confirmation is not a final order and therefore the plan was properly rejected by the bankruptcy court. 784 F.2d at 1442–44. Neither situation is present here and the district court cites no other authority to vacate a confirmed plan.

## B.

We must now examine the provisions of 11 U.S.C.A. § 1325(a), which directs the handling of secured claims, against this policy of finality. The Bankruptcy Code's criteria for treatment of secured claims in Chapter 13 plans are set forth in 11 U.S.C.A. § 1325(a)(5). According to § 1325(a)(5), in order for a plan to be confirmed, with respect to each allowed secured claim provided for by the plan, one of the following three conditions must be met:

    (A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder....

11 U.S.C.A. § 1325(a)(5)(A)–(C).

The district court determined that surrendering the property in question was not a consideration in this case. Therefore, the subpart (C) condition of 11 U.S.C.A. § 1325(a)(5) was not an issue. The question then becomes whether the Szosteks' plan met either the conditions of subparts (A) or (B). Kissell reasons that since the Szosteks' plan does not provide for present value on his secured claim pursuant to subpart (B)(ii), the plan should not have been confirmed and, consequently, must be revoked. Thus, Kissell interprets the Code to require that *only if* the plan meets the conditions of § 1325(a)(5) can it be confirmed.

If the provisions of § 1325(a)(5) are mandatory, as Kissell contends, then a plan cannot be confirmed if it does not meet the requirements of that section. We must determine whether § 1325(a)(5)(B)(ii) is mandatory, as Kissell contends, or whether the section is discretionary, *i.e.*, it guarantees confirmation if a plan comports with the statutory provisions, but does not mandate that the provisions be met in order for confirmation to occur.

We note at the outset that the Code section which explicitly contains mandatory requirements for confirmation of a debtor's Chapter 13 plan is 11 U.S.C.A. § 1322, which unequivocally states "the plan shall" do three things. Section 1322 provides in relevant part:

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments of claims entitled to full priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claims; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

11 U.S.C.A. § 1322(a). By comparison, the language of § 1325(a) states that a "court shall confirm a plan if" certain things occur. However, it does not state "only if" the described events occur. Thus, the logical interpretation is that if the conditions of § 1325(a) occur, the court *must* confirm the plan. On the other hand, if the conditions of § 1325(a) are not met, although the requirements of § 1322 are fulfilled, the court has the discretion to confirm the plan. If Congress had intended for § 1325(a) to be mandatory, it could have included that requirement with the requirements already listed in § 1322.

Review of a comparable bankruptcy section, one dealing with the confirmation of chapter 11 plans, supports the conclusion that § 1325(a) is not mandatory. The text of 11 U.S.C.A. § 1129 specifically states that "The court shall confirm a plan *only if* all of the following . requirements are met".... (Emphasis added.) Thus, the distinction between § 1322 and § 1325(a) and the inclusion of the "only if" language in § 1129, which is absent from § 1325(a), show an unmistakable intent on the part of Congress that a plan may be confirmed even if it does not comport with the requirements of § 1325(a)(5).

We find additional guidance in a recent bankruptcy court decision which described § 1325(a)(5) as follows:

Section 1325(a)(5) does not really require that creditors receive the value of this secured claim in order for the plan to be confirmed. Section 1325 provides that the court shall confirm the plan if the six listed criteria are met. § 1325(a) contains sufficient conditions for confirmation of a chapter 13 plan, but not necessary conditions for confirmation of a chapter 13 plan. Thus, as written, § 1325(a) does

not contain requirements for confirmation.

*In re Brady,* 86 B.R. 166, 169 (Bkrtcy.D. Minn.1988).[6]

Kissell relies on *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir. 1982), to support his position that a plan must comply with § 1325(a) of the Code.[7] *Memphis Bank & Trust* involved the procedure established by the Court of Appeals for the Sixth Circuit to be followed by the bankruptcy courts in reviewing a Chapter 13 plan involving secured claims. The court of appeals held that the bankruptcy court is to determine the amount of interest to be paid on secured claims. In so directing, the court stated, "section 1325(a)(5)(B) seems to require the Bankruptcy Court to assess interest on the secured claim for the present value of the collateral (if it is not to be paid immediately) in order not to dilute the value of that claim through delay in payment." *Memphis Bank & Trust,* 692 F.2d at 429.

It is important to note, however, that although *Memphis Bank & Trust* involved an appeal to the district court from the bankruptcy court order confirming the debtor's plan, there is nothing in the decision that indicates a timely appeal was not taken. Therefore, *Memphis Bank & Trust* does not support the contention by Kissell that a confirmed plan can be challenged where no timely appeal was filed.

Kissell also points to language in the confirmation order which states

upon consideration of the plan submitted by the debtor under chapter 13 of title 11 U.S.C. and the standing trustee's report which has been filed; and it appearing that:

\* \* \* \* \* \*

B. the plan complies with the provisions of 11 U.S.C. §§ 1322 and 1325 and with other applicable provisions of title 11 …

to argue that the provisions of § 1325(a) are mandatory. We are not persuaded that one line in a form order was intended to make the requirements of a statutory provision mandatory. Rather, we consider the language to be in compliance with Bankr. Rule 3020(c) which provides that the "order of confirmation shall conform to Official Form No. 31…."

We conclude that the provisions of § 1325(a) are not mandatory. Instead, § 1325(a) requires the bankruptcy court to conform a plan which complies with the statute, although it leaves an area of discretion for the court to confirm a plan which comports with the mandatory provisions of § 1322, but does not meet the conditions of § 1325(a)(5)(B)(i)–(iii). Thus, the cases on which Kissell relies must be considered and compared with the cases which hold that the failure of a secured creditor to make a timely objection results in the creditor being deemed to have accepted the plan pursuant to 11 U.S.C.A. § 1325(a)(5). Where acceptance under that subsection exists, the requirement for present value need not be satisfied, since

---

**6.** *See also In re Zimble,* 47 B.R. 639 (Bkrtcy.D.R. I.1985), where the bankruptcy court denied the creditor's motion to obtain an increased interest rate to equal the prevailing market rate after a plan had been confirmed. The creditor had notice of the plan but did not object. The court stated that, in the absence of a confirmed plan, the creditor's claim would be colorable; however, once the plan was confirmed the creditor lost his right to assert any rights other than those provided for by the confirmed plan because the plan became final under § 1327.

**7.** In addition, Kissell relies on *General Motors Acceptance Corp. v. Lefevre,* 38 B.R. 980 (Bkrtcy. D.Vt.1983), and *In re Trent,* 42 B.R. 279 (Bkrtcy. W.D.Va.1984), to support the argument that the requirements of 11 U.S.C.A. § 1325(a)(5) *must* be met in order for a Chapter 13 plan to be confirmed. In *General Motors Acceptance*

*Corp.,* the district court affirmed the bankruptcy court's rejection of the debtor's Chapter 13 plan because the plan did not provide for the payment of interest (present value) on the creditor's secured claim. In *In re Trent,* a Chapter 13 plan was rejected by the bankruptcy court when it did not provide for the payment of interest on the creditor's secured claim where a timely objection was made by the creditor. These cases do stand for the proposition that a Chapter 13 plan must provide for interest (present value) on secured claims. However, in both cases, the issue was raised timely and litigated during the court's consideration of whether to confirm the proposed plan. Therefore, neither case directly supports Kissell's argument that a confirmed plan can be vacated for failure to have provided for interest on a secured claim.

only one of the three requirements of § 1325(a)(5) need be met. *Cf.* 5 Collier on Bankruptcy § 1327.01.

Indeed, based on the policy of finality as discussed in section A above, if Kissell can be deemed to have accepted the plan by failure to make an objection, the first condition of § 1325(a)(5) is satisfied. A recent decision by the Court of Appeals for the Tenth Circuit supports our conclusion that Kissell's failure to make a timely objection constitutes acceptance of the plan. In *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir.1988), the bankruptcy court had ruled that a non-objecting creditor was deemed to have accepted a Chapter 11 plan and the district court affirmed. The creditor in *In re Ruti–Sweetwater, Inc.* made the same objection that Kissell made in the instant case: that there must be an affirmative acceptance of a plan which does not provide for present value on a secured claim. The Court of Appeals for the Tenth Circuit affirmed the district court's holding that the creditor's inaction constituted an acceptance of the plan. The court reasoned:

> to hold otherwise would be to endorse the proposition that a creditor may sit idly by, not participate in any manner in the formulation and adoption of the plan in reorganization and thereafter, subsequent to the adoption of the plan, raise a challenge for the first time. Adoption of (this) approach would effectively place all reorganization plans at risk in terms of reliance and finality.

836 F.2d at 1266.

The general rule is that the acceptance of the plan by a secured creditor can be inferred by the absence of an objection. *Cf. Ruti–Sweetwater,* 836 F.2d at 1266. The district court here erroneously concluded that this acceptance is generally limited to situations where the creditor's claim is within the "cram-down provision" [8] because the creditor is then assured his payments will have a present value equal to his allowed secured claim, thereby securing his

constitutionally protected property right. The district court further reasoned that, since the Szosteks' plan did not contain a cram-down provision, neither the trustee or the court could reasonably infer acceptance. The district court's reasoning is contradicted by our holdings in previous cases as well as the opinion of the Court of Appeals for the Tenth Circuit in *In re Ruti–Sweetwater.*

A similar situation arose in *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987), where the creditor advocated much the same position as the district court here, *i.e.,* that the alleged failure of a plan to comply with the provisions of the Code effectively rendered that plan revocable despite the confirmation order. In *Republic Supply Co.,* the Court of Appeals for the Fifth Circuit recognized that the release of a guarantor was arguably prohibited by the Code. However, the court held that it was an issue which should have been addressed on appeal from the confirmation order. The court stated,

> Regardless of whether that provision is inconsistent with bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed. [The creditor], in effect, is now seeking to appeal the confirmed Plan and asking us to review it on its merits. Questions of the propriety or legality of the bankruptcy court confirmation order are indeed properly addressable on direct appeal. [The creditor], however, is now foreclosed from that avenue of review because it chose not to pursue it.

815 F.2d at 1050.

We conclude that, once the Szosteks' plan was confirmed, it became final under § 1327 and, absent a showing of fraud under § 1330(a), it could not be challenged under § 1325(a)(5)(B)(ii) for failure to pay Kissell the present value of its claim.

---

**8.** "Cram-down" means that if a secured creditor does not accept a Chapter 13 plan it can be forced upon him by providing for payments of the present value of his claim. *In re Brady,* 86 B.R. at 170.

## III.

Kissell's final argument, the one which was accepted by the district court resulting in the revocation of the confirmation order, is that the bankruptcy court and the trustee did not fulfill their obligations when they approved a plan which was not in compliance with 11 U.S.C.A. § 1325(a)(5). The role of the court in this context was discussed in *In re Bowles*, 48 B.R. 502 (Bkrtcy.E.D.Va.1985), where the bankruptcy court held that it had an independent duty to examine a plan for compliance with the code even though no objections by creditors were made. In agreement are *In re Steinhorn*, 27 B.R. 43 (Bkrtcy.S.D.Fla. 1983), and *In re Lucas*, 3 B.R. 252 (Bkrtcy. S.D.Cal.1980), where the bankruptcy courts held that the court itself has a responsibility to determine whether a debtor's plan meets code requirements. However, these cases involved the court questioning the provisions of the plan prior to confirmation, not afterward. Moreover, in both *Bowles* and *Steinhorn,* the court found that the creditors' plans were not proposed in good faith.

Even though the court in *In re Bowles* recognized a duty to see that the plan meets the Bankruptcy Code requirements, the court also recognized that it has discretion in performing this duty. The *Bowles* court explained that "Congress has chosen a standard in § 1322(b)(1) [referring to contents of a plan] which in the administration of cases in Chapter 13 and the confirmation of plan under § 1325 necessarily involves the exercise of the court's discretion." *Bowles,* 48 B.R. at 509. *Cf. In re Lucas,* 3 B.R. 252 (Bkrtcy.S.D.Cal.1980) (court did not confirm plan because it was felt the debtor, a single mother of three, could not realistically comply with the provisions). None of the cases offered by Kissell to show that the bankruptcy court has an independent duty to examine the plan, however, is analogous to the Szosteks' situation, since the cases did not involve confirmed plans nor did they involve the present value provisions of § 1325(a)(5)(B)(ii).

While we do not understate the importance of the obligation of the bankruptcy court or the trustee to determine that a plan complies with the appropriate sections of the Bankruptcy Code prior to confirmation of the plan, we nonetheless recognize that the affirmative obligation to object to the Szosteks' plan rested with Kissell, not with the bankruptcy court or the trustee. As noted by the Court of Appeals for the Tenth Circuit in *In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988), creditors are obligated to take an active role in protecting their claims. *See also In re Record Club of America,* 38 B.R. 691, 696 (M.D.Pa.1983) (the Bankruptcy Code contemplates that concerned creditors will take an active role in protecting their claims). Otherwise, Rules 3017 and 3020(b), which set a deadline for filing objections to a plan, would have no substance. Kissell's position that, even in the absence of fraud, a confirmed plan which does not comply with the present value provision in § 1325(a)(5)(B)(ii) can be vacated is inconsistent with the general policy favoring the finality of confirmed plans as evidenced by the Supreme Court's decision in *Stoll.*

## IV.

We hold that the Szosteks' plan was accepted by the Kissell Corporation since Kissell failed to object timely to the plan's confirmation. Moreover, we find that the provisions in 11 U.S.C.A. § 1325(a)(5) are not mandatory and do not require the revocation of the confirmed plan under the facts of this case. Because the district court based its determination that the bankruptcy court and trustee had failed to fulfill their obligations on an improper construction of § 1325, we will reverse the order of the district court which vacated the bankruptcy court's order confirming the reorganization plan and remand for the entry of an appropriate order reinstating the order of the bankruptcy court.