**In re Terris Lee FINK, Carol Fink, Debtors.**

**Bankruptcy No. 3–89–03575 (A) and (B).**

United States Bankruptcy Court, S.D. Ohio, W.D.

May 10, 1990.

Jay M. Patterson, Trial Atty. and Lawrence J. Miltner, of counsel, Asst. Attys. Gen., Ohio Student Loan Com'n, Columbus, Ohio.

Charles B. Fox, Dayton, Ohio, for debtors.

George W. Ledford, Englewood, Ohio, trustee.

## ORDER GRANTING RELIEF FROM CODEBTOR STAY

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon two motions by the Ohio Student Loan Commis-

sion for relief from the co-maker automatic stay under 11 U.S.C. § 1301(a) and (c) and § 362. This proceeding arises in a case referred to this court by the standing order of reference in this district and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

This opinion constitutes the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

In reaching its decision the court considered stipulations of the parties and all exhibits attached to the pleadings, including the original notes, notice of loan guarantee and disclosure statement, and repayment/consolidation addendum and disclosure statement for the Carol J. Fink loan in contested matter (A) and the Terris L. Fink loan in contested matter (B). The court also considered the arguments of counsel including the citations of authority.

As findings of facts for the contested matter (A), the Carol J. Fink loan, the court finds that this debtor borrowed a total of $12,500 between July 30, 1985 and September 8, 1988 from lending institutions on guaranteed student loans which were later assigned to the Ohio Student Loan Commission. The loans were co-signed by Ruth A. Magness, mother of the debtor.

Contested matter (B) concerns the Terris L. Fink loans from the Ohio Student Loan Commission totaling $10,000 incurred from September 8, 1983 to August 9, 1985. These loans were all co-signed by the debtor's father, Kenneth L. Fink. Shirley A. Fink was an additional co-maker on the 1983 and 1986 loans. Payments have been made on each of the loans since the repayment period for the loans began.

Terris Lee Fink and Carol Fink filed a chapter 13 bankruptcy petition on October 5, 1989. The plan proposed payment to unsecured creditors of ten (10%) percent of their claims during approximately forty-six (46) months. The plan provides that the student loans "will not be discharged in plan." It is uncontroverted that the balances of the loans are $12,464.70 for Carol Fink and $8,965.30 for Terris Fink. Debtors responded to the motion and the matter came before the court for hearing on March 28, 1990.

## CONCLUSIONS OF LAW

The relevant portion of Section 1301 of the Bankruptcy Code, which governs the stay of actions against codebtors, reads as follows:

(a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

(b)....

(c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—

(1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;

(2) the plan filed by the debtor proposes not to pay such claim; or

(3) such creditor's interest would be irreparably harmed by continuation of such stay.

(d)....

Debtors assert that the creditor would not be irreparably harmed in the instant matter because the debtors' chapter 13 plan provides that their student loans will not be discharged and, therefore, the creditor will have the right to proceed against the debtors at the conclusion of the debtors' plan. This argument, however, overlooks the fact that § 1301(c) contains three independent grounds for granting relief from the codebtor stay and that irreparable

harm to a creditor is but one of the bases for granting relief. The independence of these three grounds is evident from the grammatical structure of the statute itself and is consistent with the legislative history of the statute:

> Subsection (c) requires the court to grant relief from the stay in certain circumstances. The court must grant relief to the extent that the debtor does not propose to pay, under the plan, the amount owed to the creditor. The court must also grant relief to the extent that the debtor was really the codebtor in the transaction, that is, to the extent that the nondebtor party actually received the consideration for the claim held by the creditor. Finally, the court must grant relief to the extent that the creditor's interest would be irreparably harmed by the stay, for example, where the codebtor filed bankruptcy himself, or threatened to leave the locale, or lost his job. H.R.Rep. No. 595, 95th Cong., 1st Sess. 426 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6382.

§ 1301(c)(2) provides that the court *shall* grant relief from the codebtor stay to the extent that "the *plan* filed by the debtor *proposes not to pay* such claim." (Emphasis Supplied) The statutory language is unqualified.

> There is no limitation on the creditor's right to sue the co-debtor for the amount not provided for *by the plan.* There is no requirement that suit be deferred while the debtor pays under the plan during a period of years.

*Household Finance Corporation v. Jacobsen (In re Jacobsen),* 20 B.R. 648, 650 (9th Cir. BAP 1982). Here, the debtors' plan proposes to pay only 10% of the creditor's claims and, therefore, the creditor is entitled to relief form the stay to pursue the remainder of its claims against the codebtors. Whatever the ultimate effect of the debtors' plan provision not to discharge the creditor's claim, it is clear that the provision does not provide any additional payments *under the plan,* and, therefore, has no bearing when considering relief from the codebtor stay under § 1301(c)(2).

In addition to the statutory language of § 1301, relief from the codebtor stay in this proceeding is in accordance with the rationale underlying the stay:

> If the debtor proposes not to pay a portion of the debt under his chapter 13 individual repayment plan, then the stay is lifted to that extent. The creditor is protected to the full amount of his claim.... Thus, if the debtor proposes to pay only $70 of a $100 debt on which there is a cosigner, the creditor must wait to receive the $70 from the debtor under the plan, but may move against the co-debtor for the remaining $30 and for any additional interest, fees, or costs for which the debtor is liable.... [The stay] does not affect [the creditor's] substantive rights. It merely requires him to wait along with all other creditors for that portion of the debt that the debtor will repay under the plan.
>
> ....
>
> [The stay] is not relief for an individual that is not a debtor under the bankruptcy laws. It is designed only to protect the principal debtor, not the co-debtor. Any protection of the co-debtor is incidental. H.R.Rep. No. 595, 95th Cong., 1st Sess. 122–123 (1977), U.S.Code Cong. & Admin. News 1978, pp. 6083–6084.

Again, it is the debtors who are in bankruptcy and the debtors' codebtors, except as specified under § 1301, are not entitled to be protected under the Bankruptcy Code unless they have also filed for relief under the Bankruptcy Code. *Old Phoenix National Bank v. Britts (In re Britts),* 18 B.R. 203, 206 (Bankr.N.D.Ohio 1982).

> The benefit Congress intended to grant the co-debtor was to delay the creditor in asserting his rights under the contractual relationship until the debtor had an opportunity to formulate his plan proposed under Section 1301(c). Any terms beyond this would be in contravention of Congress' intent to not affect the substantive rights of the creditor to proceed against the co-debtor, and would in effect grant a co-debtor who has not filed any action under Title 11 the protection of the Bankruptcy Code. *Id.*

When a person co-signs a debt of another, they are obligating themselves to pay the debt should the primary debtor default on the payments. To allow a co-maker on a note to absolve themselves from payment on that note for four years would in effect nullify the purpose of having a co-maker on a note. *Police Federal Credit Union v. Holmes (In re Holmes)*, 9 B.R. 454, 456 (Bankr. D.C. 1981).

For the foregoing reasons, the motion of the Ohio Student Loan Commission is granted and the automatic stay against the co-debtor is removed to the extent necessary for the movant to collect the amount for which the debtors' plan does not provide payment.

IT IS SO ORDERED.