**In re Kimberly Y. WESTBROOK, Debtors.**

**Bankruptcy No. 96–05184.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Sept. 29, 1999.

Earl Reuther, Birmingham, AL, for debtor.

Paul Spina, Birmingham, AL, for movant.

## ORDER SUSTAINING DEBTOR'S OBJECTION TO CLAIM AND DISALLOWING THE AMENDED CLAIM OF GENERAL MOTORS ACCEPTANCE CORPORATION FOR POST–PETITION INTEREST

BENJAMIN COHEN, Bankruptcy Judge.

The matter before the Court is an *Objection to Claim* filed on June 8, 1999 by the debtor, Kimberly Y. Westbrook. A hearing was held on July 13, 1999. The debtor and her attorney, Earl J. Reuther, appeared, along with Charles King, the Assistant Chapter 13 Trustee and Paul Spina, the attorney for the claimant General Motors Acceptance Corporation (GMAC). The matter was submitted on the representations and arguments of counsel and on the record in this case. No evidence was offered.

### I. Background

GMAC, a secured creditor of the debtor, filed an initial claim in this case on August 23, 1996. It filed an amended claim on April 19, 1999, some 30 months after confirmation of the debtor's plan of reorganization. The initial claim did not include interest on the debtor's debt to GMAC, but the amended claim did. That claim to interest prompted the debtor's objection to the amended claim.

### II. Findings of Facts

The debtor filed the present Chapter 13 case on July 31, 1996. At the time, GMAC held a purchase money security interest in the debtor's automobile. To pay GMAC and other creditors, the debtor proposed to fund her Chapter 13 plan with payments to the Chapter 13 trustee of $75.00 weekly for a period of 60 months. In regards to GMAC's interest, the debtor's plan specifically provided in Paragraph II.B. that:

> The holder of each SECURED claim shall retain the lien securing such claim until a discharge is granted and such claim shall be paid in full with interest at the rate of 0.00% per annum in deferred cash payments as follows ...

| Name of Creditor | Total Amount of debt | Debtor's Value | Description of collateral | Interest factor | Debtor's fixed payments |
|---|---|---|---|---|---|
| General Motors Acceptance Corporation | 16,000 | 16,000 | 1994 Honda Accord | 0.00 | 0.00 |

Clearly, the debtor considered her debt to GMAC to be $16,000, the collateral securing GMAC's interest to be a 1994 Honda Accord, her value in the automobile to be $16,000, the interest amount to be paid as zero, and the amount of fixed payments to GMAC to be zero.

On August 8, 1996, a copy of the debtor's plan was mailed to GMAC, along with a notice of the confirmation hearing.[1] On September 11, 1996, prior to the scheduled date of the confirmation hearing, GMAC filed a proof of claim. In paragraph 5 of the proof of claim, GMAC indicated that the amount of its claim, as of the date of the bankruptcy filing, was $18,494.06.

---

1. A certificate of service of the mailing by Mr. Joseph Speetjens, a representative of TRACOR, a commercial firm designated by the Court to mail bankruptcy notices is included in the Court's file.

*GMAC Proof of Claim,* filed August 23, 1996 (Claim No. 3).

In the same paragraph, where a space is provided for a claimant to indicate that more information is provided, there is the explanation:

Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

GMAC did not check the box provided and did not attach any statement itemizing charges in addition to the principal amount claimed; however, at the bottom of the proof of claim, in bold letters and quotation marks, GMAC included:

**"The finance charges will continue to accrue daily at a rate permitted by contract."**

Along with that information, GMAC attached a copy of the finance agreement signed by the debtor. That agreement provided for interest at the rate of 12.50% per annum on the amount borrowed by the debtor.

*GMAC Proof of Claim,* filed August 23, 1996 (Claim No. 3).[2]

A confirmation hearing was held on September 11, 1996, as specified in the notice to GMAC mailed along with the debtor's plan. No written objection to confirmation was filed by GMAC or any other entity and no one appeared at the hearing in opposition to confirmation.

On September 12, 1996, the Court entered an order confirming the debtor's plan. That order required the debtor to pay $86.00 per week to the Chapter 13 trustee for 60 months, required payment by the trustee of administrative expenses from the first monies received by him, and provided for the payment of the GMAC claim. In that regard, the confirmation order specifically provided that after administrative costs were satisfied:

the following fixed payment(s) shall be paid when a secured proof of claim is properly filed: GENERAL MOTORS ACCEPTANCE CORP. ($18,494.00) $320.00 PER MONTH

*Order of Confirmation, Order for Payment of Filing Fees in Installments, Payment Order* entered September 12, 1996 (Proceeding No. 6).

The payment records of the Standing Chapter 13 Trustee indicate that GMAC was paid all of the $320 fixed monthly payments that came due following entry of the confirmation order. However, on April 19, 1999, GMAC filed an "Amended Proof of Claim" regarding the same debt. In contrast to its initial proof of claim for $18,494.00, GMAC claimed $23,430.68. The reason or basis for the increase is not specified in the information provided on the claim form; however, in the space provided on the form for "CALCULATION OF BALANCE DUE," there appears:

| | |
|---|---|
| Principal Amount | $23430.68 |
| Interest or Finance Charge | |
| Additional Charges | |
| TOTAL | $23430.68 |

*GMAC Amended Proof of Claim,* filed April 19, 1999, (Claim No. 3).

## III. Contentions

At the hearing on the objection, GMAC explained: (1) that the amount in the original proof of claim reflected the "pay off" figure (principal plus accrued but unpaid interest) for the debtor's loan, (as of the date of the filing of the bankruptcy petition); and (2) that the amended proof of claim reflected the gross balance of the payments remaining under the debtor's

2. The specifics of the parties' transaction are included in the contract attached to the claim. The car was purchased on October 7, 1995; the cash price of the car was $18,521.23; the debtor made a $2,550.00 down payment; the debtor's monthly payment under the financing agreement was $433.92; the duration of the financing agreement was 60 months; and the total amount *financed* was $19,188. That amount included the cash price, plus credit insurance of $2,020.46, plus an extended service plan for $1,180.00, minus the down payment.

contract (as of the time of bankruptcy). Based on those facts, GMAC contended that although its original claim did not provide for interest, that pursuant to 11 U.S.C. § 1325(a)(5), it is entitled to interest for the duration of the debtor's plan, on the amount of its secured claim. GMAC concluded that the debtor could satisfy this contended requirement of section 1325(a)(5) only by payment of the balance of payments due under the contract, a balance GMAC contends includes both *principal and interest.*

The debtor contended that because of the lateness of GMAC's attempt to include this interest, coupled with GMAC's acceptance of the Court-allowed payments for the first 30 months of the debtor's confirmed plan, allowing the interest would be inequitable and prejudicial.

## IV. Conclusions of Law

This Court has considered the doctrine of res judicata and the concept of waiver to resolve these matters.

### A. Res Judicata

 Section 1325(a)(5) of the Bankruptcy Code provides that a Chapter 13 plan shall be confirmed, "with respect to each allowed secured claim provided for by the plan," if:

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1325(a)(5).

Consequently, in order for a bankruptcy court to confirm a Chapter 13 plan with respect to a particular allowed secured claim, one of those requirements must be satisfied. Factually, section 1325(a)(5) may be satisfied from a debtor's proposed plan. Legally, section 1325(a)(5) may be satisfied if the doctrine of res judicata applies. The latter applies here.

 The doctrine of res judicata not only bars a court from relitigating issues that have been litigated in a cause but also bars a court from litigating issues that *may have been litigated.* Consequently, under res judicata, if a confirmation hearing has been held and a confirmation order entered, if no section 1325(a)(5) objection has been made, that order becomes binding as to any section 1325(a)(5) objection that could have been made. In this way, whether a debtor factually satisfies the requirements of section 1325(a)(5) or not, the requirements *are* satisfied for purposes of confirmation.[3] In other words, if an objection to confirmation of a debtor's plan on section 1325(a)(5) grounds could have been raised and litigated prior to confirmation, whether those grounds were litigated or not, the confirmation order becomes conclusive as to those grounds.[4]

---

3. For a general explanation of res judicata, see note 3 to *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544 (11th Cir.1990), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990), which reads in part:

Res judicata is frequently used to refer generically to the law of former adjudication. A former judgment can create two different types of bars to subsequent litigation, depending on whether the subsequent litigation arises from the same or a different cause of action. If the later litigation arises from the same cause of action, then the judgment bars litigation not only of "every

matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented." *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 319, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927).
*Id.*

4. Section 1327(a) of the Bankruptcy Code provides, "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan," 11 U.S.C. § 1327(a). That section

In the pending matter, once the confirmation order was entered without objection, that order became conclusive to GMAC, and others, as to any grounds of opposition to confirmation based on section 1325(a)(5) that *could have been raised and litigated prior to confirmation.*

The above conclusion is required under the holding of *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544 (11th Cir.1990), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). In *Justice Oaks II* guarantors of a loan secured by real estate owned by a Chapter 11 corporate debtor alleged fraud in the inducement of the guarantee agreement and sought subordination of the secured parties' debts and an equitable lien. The court held that the guarantors were barred from prosecuting the adversary proceeding against the debtor and the secured creditors because of the provisions of the corporate debtor's confirmed plan. That plan authorized the debtor to sell the real estate and pay the proceeds to the secured creditors. Writing for the court, Chief Judge Gerald B. Tjoflat explained, "[A] bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits." 898 F.2d at 1550.

■ The process for reaching *Justice Oaks II* type decisions is outlined in the court's analysis of the preclusive effect given to some orders. As Chief Judge Tjoflat explains, that process begins with consideration of four conditions that must

be met before an earlier order can preclude litigation in a later proceeding. Those factors, in order of consideration are: first, the earlier order or judgment was rendered by a court of competent jurisdiction and in accordance with the requirements of due process; second, the earlier order or judgment was final and on the merits; third, the same parties, or their privies, that were involved in the prior proceeding are also involved in the subsequent proceeding; and fourth, the subsequent proceeding involves the same cause of action or claim as was involved in the prior proceeding.

In this case, all four *Justice Oaks II* requirements are satisfied.

### I. Jurisdiction and Due Process

First, the order confirming this debtor's plan was entered by a court of competent jurisdiction and in accordance with due process. No challenge to this Court's jurisdiction over confirmation of the plan has been, or could be, asserted. The procedural requirements of the bankruptcy rules for giving adequate notice of the debtor's proposed plan and the hearing on confirmation were complied with and the hearing on confirmation was property conducted. See 11 U.S.C. § 1324 and Federal Rules of Bankruptcy Procedure, Rule 2002(b) & Rule 3015.[5] GMAC had ample and clear notice of the terms of the debtor's plan and of the date and time of the confirmation hearing. GMAC had ample opportunity to object to confirmation and

has been interpreted to mean that, "Under § 1327, a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation," *In re Szostek,* 886 F.2d 1405, 1408 (3rd Cir. 1989).

**5.** Section 1324 of the Bankruptcy Code requires a court to hold a hearing on confirmation of the debtor's plan, after notice, and provides that any party in interest may object to confirmation. Rule 2002(b) provides that the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 25 days notice by mail of the time fixed

for filing objections and the hearing to consider confirmation of a Chapter 13 plan. Rule 3015(d) requires a Chapter 13 plan or a summary of the plan to be included with each notice of the hearing on confirmation mailed pursuant to Rule 2002. Rule 3015(f) requires an objection to the confirmation of a Chapter 13 plan to be filed and served on the debtor and the trustee prior to confirmation. If no objection is timely filed, the court may determine, without receiving evidence on the issues, that the plan has been proposed in good faith and is not by any means forbidden by law. Fed.R.Bankr.P. 3015(f).

to be heard on any such objection.[6] As to this factor, the Court finds that it had jurisdiction over the confirmation process and GMAC was afforded due process.

### 2. Final Judgment

■ Second, as indicated before, the order of confirmation constitutes a final judgment on the merits. Again, writing for the Court, Judge Tjoflat explains, "This issue has been settled for some time: a bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits." 898 F.2d at 1550. As to this factor, the Court finds that its confirmation order was a final judgment on the merits.

### 3. Same Parties

Third, the parties to the present proceeding were parties to the confirmation proceeding and the party against whom the prior order is asserted, GMAC, had a full and fair opportunity to raise its objection to confirmation. Again, Judge Tjoflat explains, "[O]ne who participates in a chapter 11 plan confirmation proceeding becomes a party to that proceeding even if never formally named as such." *Id.* As to this factor, the Court finds that GMAC was a party to the confirmation proceeding in this case.

### 4. Same Action

Fourth, GMAC's amended claim for interest under section 1325(a)(5) involves the same "cause of action" at issue in the confirmation proceeding. The issue of section 1325(a)(5) interest was specifically raised by the debtor's Chapter 13 plan. That plan plainly indicated that no interest would be paid on GMAC's claim. Again, Judge Tjoflat explains, "Claims are part of the same cause of action when they arise out of the same transaction or series of transactions." 898 F.2d at 1551. As to this factor, the Court finds that the current action is the same cause of action raised at confirmation.

### 5. Conclusion as to Res Judicata

Because the order confirming the debtor's Chapter 13 plan satisfies the four essential elements of claim preclusion, that order is, "an absolute bar to the subsequent action or suit between the same parties ... not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented." 898 F.2d at 1552 (quoting *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069 (1927)). Because GMAC could have opposed confirmation and could have made a claim for interest pursuant to 11 U.S.C. § 1325(a)(5), to permit GMAC to amend its claim now to include interest provided for under § 1325(a)(5), would constitute, as Judge Tjoflat wrote, "an impermissible collateral attack on the order confirming the plan." *Id.* at 1552.

Consequently, GMAC is precluded now from relitigating the issue of its entitlement to such interest. Any other result would completely eviscerate the "binding" effect of confirmation sought to be achieved by section 1327(a), and render nugatory the language of 11 U.S.C. § 1330, which, by its plain terms, permits revocation of an order of confirmation only for "fraud."[7]

### B. Waiver

■ GMAC waived its right to claim interest under section 1325(a)(5). The concept of "waiver" is discussed in *Dooley v. Weil (In re Garfinkle),* 672 F.2d 1340 (11th Cir.1982). Writing for the court, Judge Harlington Wood, Jr., Circuit Judge for the Court of Appeals for the Seventh Circuit (sitting by designation), explained:

---

6. The movant has not claimed that it did not receive notice of the bankruptcy filing or notice of the plan or date for confirmation.

7. As its analysis in this matter, this Court has liberally adopted Judge Tjoflat's concise analysis and descriptions in *In re Justice Oaks II, Ltd.*

[W]aiver is the intentional relinquishment of a known right. Waiver requires (1) the existence at the time of the waiver of a right, privilege, advantage or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit. Waiver may be express, or ... implied from conduct. A party may waive any right which it is legally entitled to, including rights secured by contract. When waiver is implied from conduct, the acts, conduct, or circumstance relied upon to show waiver must make out a clear case.

672 F.2d at 1347.[8]

This debtor's plan summary, mailed to GMAC prior to the confirmation hearing, plainly and conspicuously stated the debtor's intent not to pay interest on the debt owed to GMAC. The plan did so *explicitly*, by providing in no uncertain terms that, "such claim shall be paid in full with interest at the rate of 0.00% per annum." And the plan did so *implicitly* as the amount committed by the debtor to fund the plan would be woefully insufficient to pay the claim if interest were added. Consequently, this Court's confirmation order did not contain any provision for the payment of interest to GMAC and did not contain any language remotely suggesting that such interest would be paid. As such, the interest elliptically referred to on the bottom of the GMAC claim form was not included.

All of the evidence suggests that GMAC was aware of this result. The confirmation order specifically provided for payment to GMAC of the amount stated in the original proof of claim, through monthly payments, which when multiplied against the number of months of the plan, totaled only the amount requested in the claim. The confirmation order required the debtor to pay the trustee $86.00 per week, obviously and amount *insufficient on its face* to pay any interest in addition to the sum certain stated in GMAC's original claim.

Similarly, the evidence suggests that GMAC accepted this result. GMAC received and cashed checks as payments from the Chapter 13 trustee for the first 30 months of the debtor's plan, where each payment was in the amount required by this Court's order of confirmation. That amount, of course, was an amount sufficient to pay only the face amount of GMAC's claim.

This Court must conclude that GMAC's actions cumulatively demonstrate an intent to waive the debtor's obligation to pay interest under section 1325(a)(5). GMAC failed to object to confirmation of the debtor's plan, after having received full and clear notice of the debtor's intention not to pay interest. GMAC failed to seek reconsideration, modification or correction of the confirmation order that provided for the payment of its claim without interest. And GMAC accepted, without complaint for an extended length of time, payments made pursuant to the plan and confirmation order.[9]

---

8. "[W]aiver occurs when one in possession of any right, whether arising out of law or contract, with full knowledge of the material facts, performs an act which is inconsistent with the right or his intention to rely upon the right." *Weisbart & Co. v. First Nat'l Bank of Dalhart, Texas,* 568 F.2d 391, 396 (5th Cir. 1978).

9. See, e.g., *Wolfson v. Equine Capital Corp. (In re Wolfson),* 56 F.3d 52 (11th Cir.1995) (secured creditor waived right to object to non-dischargeability of debt resulting from debtor's sale of collateral out of trust, where creditor knew that debtor was selling collateral and using proceeds to pay general operating expenses but creditor did not object or otherwise do anything to protect its interests in the collateral); *Dooley v. Weil (In re Garfinkle),* 672 F.2d 1340 (11th Cir.1982) (purchaser from bankruptcy trustee, by silence regarding reservations pertaining to order authorizing sale, and failure to object to entry of order, waived right to withdraw from sale without forfeiting its deposit based on alleged defects known to seller prior to entry of order).

■ Given GMAC's actions, how could this Court, the debtor, or the trustee reach any other conclusion? Should this Court speculate as to whether the failure of a creditor to object to confirmation of a plan which, on its face, adversely effects its rights, is the result of a conscious tactical decision or oversight? Certainly, *"It is not contrary to the law, for a variety of practical or strategic reasons, for a creditor to stipulate or consent to be treated in a manner not technically as stringent· as required in the Code." In re Walker,* 128 B.R. 465, 468 (Bankr.Idaho 1991) (emphasis added). If GMAC intended otherwise, the time for expressing so has long past. GMAC must bear "the burden of taking affirmative steps to evaluate, advance, and protect its rights." *Id.* If it does not, who is to blame?[10]

In this case, GMAC waived any objection to the debtor's proposed non-payment of interest and is now precluded from claiming that interest.

### C. Does *In re Fawcett* Require a Different Result?

Does the decision of the Court of Appeals for the Eleventh Circuit in *Fawcett v. United States (In re Fawcett),* 758 F.2d 588 (11th Cir.1985) require a different result? This Court does not believe so.

In *Fawcett,* the I.R.S. held a lien on an item of business equipment owned by a Chapter 13 debtor. The I.R.S. filed a secured proof of claim in the debtor's case for the principal amount of the debt plus interest earned to the date bankruptcy was filed. The claim form contained the following statement: "For purposes of section 506(b) of the Bankruptcy Code, post-petition interest may be payable." 758 F.2d at 589. The debtor's plan specifically provided that "secured debts on business equipment, vehicles, tools and all other

secured debts to be paid in full—100%." *Id.*

About a year and a half after filing his case, Fawcett filed a notice to sell the equipment subject to the I.R.S. lien for an amount that exceeded the I.R.S. claim and to pay the I.R.S. (from the proceeds of the sale), the amount remaining on its original claim. The I.R.S. objected to the sale claiming that under section 506(b) it was entitled to post-petition interest from the proceeds, in addition to the amount of its original claim. The debtor contended that the I.R.S. was not entitled to section 506(b) interest because the amount specified in its proof of claim did not include post-petition interest and because his plan did not provide for the payment of post-petition interest on the I.R.S. claim. The circuit court held that the statement contained in the I.R.S. proof of claim sufficiently put the debtor on notice of a claim for post-petition interest and that the debtor's plan, by proposing to pay secured creditor's 100%, did, in fact, provide for the payment of post-petition interest to those creditors entitled to it under section 506(b). Writing for the court, Circuit Judge Thomas A. Clark stated:

If a debtor submits a generalized statement that it will pay secured creditors in full—100%, creditors are entitled to interpret that statement as guaranteeing the payment of each and every part of the creditor's claim. If the debtor wishes to be more specific and secure a confirmed plan that modifies the plain language of a 100% payment guarantee, it is the debtor's duty to put the creditor on notice by specifically detailing any exceptions. Failing this, the debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan. This comports with the long-standing rule that ambiguous terms of a document are

---

10. "Because Chapter 13 was designed to grant maximum flexibility to the parties in fashioning the terms of an acceptable repayment plan, neither the Trustee nor the Court should be expected to independently review individual provisions made for secured creditors who have received proper notice of the proceedings and do not object." *In re Walker,* 128 B.R. at 468.

to be interpreted against the party that drafted them. See *C.A. May Marine Supply Co. v. Brunswick Corp.*, 557 F.2d 1163, 1165 (5th Cir.1977). Given the facts of this case, we have no difficulty in holding that the I.R.S. put the debtor on notice that it would be claiming post-petition interest while the debtor failed to put the I.R.S. on notice that its claim would not be paid in full by the amount of the post-petition interest.

758 F.2d at 591.

The court in *Fawcett* clearly relied on the fact that the debtor failed to indicate plainly, in his Chapter 13 plan, that he did not intend to pay interest on the secured creditor's claim. The court recognized that the use, by the debtor, of the terms "in full—100%," without qualification, constituted, according to the court, an express commitment to pay post-petition interest on the creditor's claim.

Ms. Westbrook's situation is different. Even if this Court were to give GMAC the benefit of the doubt and find that the statement, "The finance charges will continue to accrue daily at a rate permitted by contract," is sufficient to claim post-petition interest, clearly the debtor put GMAC on notice that she did not intend to pay post-petition interest on GMAC's claim. Without appearance at the hearing or by objection from GMAC, this Court confirmed that proposal. GMAC did not appeal that order.

As Judge Clark wrote, "It is the debtor's obligation when seeking the court's confirmation to specify as accurately as possible the amounts which it intends to pay the creditors." 758 F.2d at 590. The debtor before this Court met that obligation. The plan proposed to pay "0.00%" interest. Unlike the debtor in *Fawcett*, the debtor here proposed a plan that clear-

ly informed the creditor that no interest would be paid on its claim. That plan was confirmed including that provision and without an objection from GMAC. GMAC is now bound by the terms of the plan and may not now claim interest in contravention of those terms.[11]

### V. Order

Based on the above, it is **ORDERED, ADJUDGED AND DECREED** that:

1. The debtor's *Objection to Claim* to General Motors Acceptance Corporation's *Amended Proof of Claim* (Claim No. 3) is **SUSTAINED;**

2. The *Amended Proof of Claim* (Claim No. 3) is **DISALLOWED.**

---

11. The portion of the court's opinion in *Fawcett* speculating on the debtor's good faith, or lack thereof, is dicta and does not appear to have been relied upon by the court in making its decision. 758 F.2d at 590. The court did not discuss Federal Rules of Bankruptcy Procedure, Rule 3015(f), which specifically per-

mits the bankruptcy court to determine that a plan has been proposed in good faith if no objection to the plan has been filed. Similarly, the court did not discuss section 1330(a) of the Bankruptcy Code, 11 U.S.C. § 1330(a), which authorizes revocation of an order of confirmation only for fraud.