**In re Ronnie Oneal ABRAMS, Daphne Lavonne Travis Abrams, Debtors.**

No. 01–11493–MAM–13.

United States Bankruptcy Court, S.D. Alabama.

March 8, 2002.

Russell S. Terry, Mobile, AL, for Nuvell Financial Services Corporation.

John A. Lockett, Jr., Selma, AL, for the Debtors.

ORDER GRANTING IN PART MOTION OF NUVELL FINANCIAL SERVICES CORPORATION TO RECONSIDER CONFIRMATION ORDER AND DENYING MOTION OF NUVELL FINANCIAL SERVICES CORPORATION TO ALLOW IT TO AMEND ITS CLAIM TO INCLUDE POSTPETITION INTEREST

MARGARET A. MAHONEY, Chief Judge.

This case is before the Court on the motions of Nuvell Financial Services Corporation to reconsider the confirmation order of May 17, 2001 and to allow Nuvell to amend its claim to include postpetition interest. This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This Court has authority to enter a final order. For the reasons indicated below, the Court is granting in part the motion seeking reconsideration of confirmation, but is denying the motion seeking amendment of the claim.

FACTS

The Abrams filed their chapter 13 bankruptcy case on March 24, 2001. They listed Nuvell Credit Corporation as a creditor. Nuvell held a lien on a 1998 Plymouth Breeze vehicle of the Abrams. The debtors valued the vehicle at $7,500 and listed Nuvell's debt as $11,083.24.

The Abrams' chapter 13 plan, sent to all creditors including Nuvell, indicated that Nuvell and the Abrams' other secured creditor, Wells Fargo, would be paid in the same manner. The plan listed the debts under "Secured Debts" as follows:

Nuvell Financial $7500, The value of the 1998 Plymouth Breeze

Wells Fargo Financial $12300, The value of the 1999 Ford F150

The plan stated that no preferences would be paid.

The confirmation hearing was held on May 10, 2001. Nuvell did not appear at the hearing nor object to confirmation of the debtors' plan. Wells Fargo did object to the plan. The Abrams negotiated a compromise of Wells Fargo's objection. They agreed to pay Wells Fargo a preference payment of $426.23 per month[1] and agreed to pay interest of 18% on the value of the vehicle of $16,812 for a total payment of $25, 615. The confirmation order, issued on May 17, 2001, indicated that Wells Fargo was to be paid a preference as agreed on a total secured claim of $25, 615.80. Nuvell was to be paid $7,500. The plan also specified that, after payment of priority expenses, the trustee would pay 100% pro rata dividends to all secured creditors whose claims are allowed, including the following:

SECURED CREDITORS MONTHLY PAYMENT TOTAL SECURED CLAIM

WELLS FARGO $426.93 $25,615.80

. . .

NUVELL FINANCIAL $7,500.00

Nuvell Financial filed the motion to amend claim and the motion to reconsider the confirmation order on December 28, 2001. The chapter 13 trustee has paid $4,642.43 to Wells Fargo since distributions commenced and paid $0 to Nuvell. The chapter 13 trustee's practice is to pay priority claims first, then preference claims, then after preference claims are paid, other secured claims being paid pro rata without a preference, and then unsecured claims.[2] Therefore, Wells Fargo, with its preference, is receiving the bulk of the payments made by the trustee and will continue to do so until paid in full.

Nuvell filed a timely proof of claim. It used a form not used in this district. The form indicated that $11,516.48 was owed to it by the Abrams and that its debt was fully secured. The form stated in paragraph 1 that the claim amount of $11,516.48 included no unmatured interest and that "[i]nterest will be computed by the Trustee's office as provided in the Plan." The plan did not request that the trustee compute interest or provide for interest.

LAW

█ Nuvell filed two motions which the Court is considering in this order: Motion to allow amended claim increasing secured claim by amount equal to projected postpetition interest to accrue upon value of collateral; and Motion to reconsider and set aside confirmation order of May 17, 2001, or, in the alternative, for relief from the automatic stay or for adequate protection. The Court will consider each motion separately. Nuvell bears the burden of proof as to each motion.

A.

Motion to Reconsider and Set Aside Confirmation Order

█ Nuvell seeks reconsideration of the confirmation order over seven months

---

1. A "preference" payment is a payment of a specified amount each month to a secured creditor. That payment is made before all other distributions, except payments upon priority debts (e.g., taxes, child support, attorneys fees).

2. Selma debtors' lawyers file different plans than Mobile lawyers. The plan form is arranged differently and the Selma plan typically provides no preferences to secured creditors. Secured creditors are paid a pro rata portion of each plan payment. For example, if Wells Fargo and Nuvell were paid pro rata according to the Abrams' original plan, Wells Fargo would be paid 59% of each plan payment and Nuvell would get 41% (after payment of priority expenses).

after its entry. Nuvell received the order when it was entered. Nuvell did not state upon what section of the Code or Rules its motion is based. There are only two possible provisions- § 1330 of the Bankruptcy Code or Fed. R. Bankr.P. 9024 (which incorporates Fed.R.Civ.P. 60 into the Bankruptcy Rules). Section 1330 provides for revocation of an order for fraud. Nuvell did not allege fraud. Nuvell's motion was also made outside the 180–day window of § 1330. The only other choice is Fed. R. Bankr.P. 9024. This Rule has been held inapplicable to chapter 13 plan revocations or modifications by many courts. See, e.g., *Branchburg Plaza Associates, L.P. v. Fesq (In re Fesq)*, 153 F.3d 113 (3d Cir.1998) (Shadur, J.), cert. denied, 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999); *United States v. Lee*, 89 B.R. 250 (N.D.Ga.1987), aff'd, *In re Hochman*, 853 F.2d 1547 (11th Cir.1988) (affirming lower court decision that stated, without discussion or cites, and not as the main holding of the case, that confirmation orders could only be revoked for fraud pursuant to 11 U.S.C. § 1330); but see, *Fesq*, 153 F.3d at 120–24 (Stapleton, J., dissenting) (Rule 9024 does not limit the applicability of Fed.R.Civ.P. 60(b) to confirmation orders, but rather, incorporates the Rule 60(b) grounds as bases to vacate confirmation orders and simply adopts the Bankruptcy Code time limits applicable to motions or complaints to vacate confirmation orders); *In re Cook*, 205 B.R. 617, 625 (Bankr. N.D.Ala.1996) ("[A] party may challenge a confirmation order only by filing a motion under Rules 9023 or 9024 or by filing a notice of appeal pursuant to Rule 8001."). See also In re Benjamin M. Blomgren, Order Disallowing Late Filed Claim and Setting Adequate Protection Payments at $125 per Month, (S.D. Ala. June 12, 2000). In this case, Rule 9024 is the only possible avenue of relief available to Nuvell. Although some courts never allow relief under Rule 9024, this Court concludes that a rigid rule is inappropriate in this case. When a due process concern has been raised, the Court will vacate the order. Therefore, the motion will be judged on a Fed. R. Bankr.P. 9024 standard. Rule 9024 incorporates into the Bankruptcy Rules Fed.R.Civ.P. 60. The burden under Rule 60(b) for setting aside a final order is a heavy one for the movant since res judicata is being negated. *Rezin v. Barr (In re Barr)*, 183 B.R. 531 (Bankr.N.D.Ill. 1995).

Nuvell asserts that it should be granted relief on several different grounds. First, it asserts that the Abrams' plan is ambiguous. It does not mention postpetition interest and does not say that a secured creditor may get less than 100% of its debt paid (including interest). Second, Nuvell argues that the confirmation order is ambiguous. It states that secured creditors will be paid "100% pro rata dividends" and also states that Wells Fargo will receive a preference. Third, Wells Fargo's treatment in the plan as amended at confirmation should have been noticed to all creditors and there has been a lack of due process as to Nuvell. The amendment adversely affected Nuvell's payment and it was given no opportunity to object.

■ The Court concludes that the plan is not ambiguous. It does not say that postpetition interest will be paid. It does not say that Nuvell will be paid its claim without interest. It is not necessary that it state those things because what it does say, it says very clearly. It states that the debtors will pay Nuvell $7,500. If Nuvell did not understand that statement, it could have sought clarification. The debtor did not need to state three different ways that Nuvell would be paid only $7,500 when it is clear as stated.

■ The order confirming the plan is ambiguous in one respect. It states that Wells Fargo will be paid a preference and it also states that payments to Wells Fargo and Nuvell will be "pro rata." The manner in which preference claims are paid by the trustee is not "pro rata" for each payment. It is only pro rata over the life of the plan. Nuvell had no way of knowing that it would be paid after Wells Fargo. The amendment that gave Wells Fargo a preference, based upon the manner in which payments are made, should have been noticed to all creditors, particularly Nuvell, because it adversely affected Nuvell. "Due Process mandates 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *U.S. v. Real Property*, 129 F.3d 1266 (6th Cir.1997) (Table, unpublished disposition) 1997 WL 702771 *1–2 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Therefore, Nuvell should be able to object to the treatment of Wells Fargo and to seek amendment to its own treatment in this case.

The Court is going to allow reconsideration of the confirmation order as it pertains to payment of the secured creditors. Therefore, the Court is not granting relief from stay or adequate protection to Nuvell at this time. The Court will carry those requests to confirmation. The amended plan of the Abrams must treat the claims of Wells Fargo and Nuvell in a manner to which they consent or in a way that provides adequate protection to both of them in the future. This does not mean that Nuvell can reopen the questions of postpetition interest, however, since there is no ground for changing that part of the order as stated above and in section B below.

B.

Motion to Allow Amended Claim Increasing Secured Claim by Amount Equal to Projected Postpetition Interest to Accrue Upon Value of Collateral

■ The motion to allow amended claim is premised on Nuvell's belief that since the plan did not say it was not paying postpetition interest it should have a right to expect it to be added. Also, if it had seen Wells Fargo's objection to the plan and its changed treatment it would have requested interest. Nuvell also stated in its claim that it expected the trustee to compute the interest on its claim. The Court concludes that Nuvell has not raised sufficient grounds for allowing a late filed amended claim. First, the plan was very clear about what Nuvell and Wells Fargo were to be paid. A specific dollar amount was allotted to each. No mention of any interest payment was made. The language was sufficient to put Wells Fargo on notice to object to the lack of interest being paid; Nuvell had the same documents sent to it. The confirmation order clearly stated that Nuvell was to be paid $7,500. That amount was listed under "TOTAL SECURED CLAIM." Also, Wells Fargo's claim was very clearly higher in the final order, an indication that interest might have been added.

■ Nuvell cannot rely on the fact that it put in the language of its proof of claim a request for interest. If it is not being paid as it requested, it needed to object to the plan. In re Frankie and Mary Taylor, Order sustaining Debtor's objection to Claim No. 16 of First Finance, Inc. n/k/a Empire Mortgage, L.L.C. and disallowing in its entirety (4/17/01) (Bankr.S.D.Ala. 2001) (citing Collier on Bankruptcy ¶ 327.02(1)(c) (15th ed.1999)); *In re Szostek*, 886 F.2d 1405 (3d Cir.1989); *In re Westbrook*, 246 B.R. 412 (Bankr.N.D.Ala. 1999); *In re Eason*, 178 B.R. 908 (Bankr.

M.D.Ga.1994); *In re Minzler*, 158 B.R. 720 (Bankr.S.D.Ohio 1993); and *Wallis v. Justice Oaks II, Ltd (In re Justice Oaks II)*, 898 F.2d 1544 (11th Cir.1990), cert. denied 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). The same would have been true if it thought that the secured value of the vehicle was incorrect, regardless of what the claim stated. The plan is res judicata as to the treatment of a creditor's claim. When Nuvell did not object to its treatment under the plan as to interest when that treatment was clear, it cannot now seek an amendment. Over seven months after confirmation is just too late. The amendment to the claim is Nuvell's way of seeking what it failed by its own action to secure at plan confirmation.

This case is like *In re Westbrook*, 246 B.R. 412 (Bankr.N.D.Ala.1999). In *Westbrook* the debtor's plan indicated 0% interest would be paid to the creditor. The creditor did not object to the plan and it was confirmed. The creditor accepted payments under the plan. However, the creditor's claim stated, on the bottom, "The finance charges will continue to accrue daily at a rate permitted by contract" and the creditor asserted that the language in its proof of claim gave it a right to interest. The Court held that the creditor could not seek to amend its claim after confirmation. It should have objected to the plan that clearly paid no interest.

In this case, the Abrams' plan did not say "0% interest" but it stated very clearly that Nuvell would be paid $7,500. The confirmation order clearly stated Nuvell's total secured claim was only $7,500. Nuvell had as much notice of a clear statement of treatment as Westbrook's creditor did.

The *Westbrook* case distinguished a case cited by Nuvell to this Court as favorable to its position-*Fawcett v. United States (In re Fawcett)*, 758 F.2d 588 (11th Cir.1985). In *Fawcett*, the IRS held a lien on business equipment owned by a chapter 13 debtor. The Fawcetts, postconfirmation, sought to sell the equipment and pay the IRS debt without interest. The IRS proof of claim had stated "For purposes of section 506(b) of the Bankruptcy Code, post-petition interest may be payable." The plan of the Fawcetts had stated that secured creditors were to be paid 100%. The Eleventh Circuit held that the plan stating that secured creditors were to be paid 100% was ambiguous and therefore the debtors had to pay the IRS the secured value and all interest. The plan was construed against the debtors.

*Fawcett* was distinguished by the *Westbrook* court. This Court concludes that the Abrams case is more like *Westbrook* than *Fawcett*. The claim amount to be paid to Nuvell was clear-not ambiguous. Unlike *Fawcett*, there was not just language saying "100%." The 100% pro rata dividend language was modified or clarified by the typed language below it that said "Total Secured Claim ... $7,500." Nuvell was also not offered a preference payment in which interest is added. For all the reasons stated in *Westbrook*, the claim cannot be amended due to res judicata.

THEREFORE IT IS ORDERED:

1. The motion of Nuvell Financial Corporation to reconsider and set aside confirmation order of May 17, 2001, or, in the alternative, for relief from the automatic stay or for adequate protection is GRANTED to the extent of allowing Nuvell to have a hearing on an amended confirmation order on appropriate treatment of all secured claims and the motion for relief from stay and adequate protection is continued to the confirmation date.

2. The motion of Nuvell Financial Corporation to allow amended claim increasing secured claim by amount equal to projected post-petition interest to accrue upon value of collateral is DENIED.

3. A hearing on an amended plan and confirmation will be held on May 2, *2002* at 9:30 a.m. at the U.S. Courthouse, Selma, Alabama.