**In the Matter of 1880 SUPERFINE LANE, INC., Debtor.**

**Bankruptcy No. 87–182.**

United States Bankruptcy Court,
D. Delaware.

Dec. 11, 1990.

Noel C. Burnham, Thomas P. Collins, Wilmington, Del., for Wilmington Trust Co.

Thomas Herlihy, III, Herlihy, Harker & Kavanaugh, Wilmington, Del., for 1880 Superfine Lane Condominium Council.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

The debtor, 1880 Superfine Lane, Inc., is a 45–unit condominium complex. It filed a Chapter 11 case on May 13, 1987, and succeeded in having a plan confirmed on September 30, 1987. On October 14, 1989, its remaining nine units were sold at auction. This contested matter concerns a dispute as to whether 1880 Superfine Lane Condominium Council is entitled to any of the proceeds of sale. It filed a notice of claim on October 18, 1989, in the amount of $28,275 for unpaid condominium fees or charges. Wilmington Trust Company, a secured creditor, objects to that claim contending it is not only insufficient but also untimely. The Council relies on excusable neglect to justify a late filing and, in any event, claims that the condo assessment charges are liens. There is the related issue of whether Council's claim is one dealt with in Article IX(e)(3) of the Plan.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (K).

## BACKGROUND

Richard D. Chalfont, architect and president of the debtor, recorded a Declaration of Condominium and Code of Regulations with the Recorder of Deeds, New Castle County, Delaware.[1] Under the Declaration, he and his wife Joan were the designated members of the Condo Council. As such, the Chalfonts maintained the common areas and collected condominium fees from other owners of condominiums. They did not collect condo fees from the debtor but the Chalfonts paid out of their personal funds $20,898.90 when Council operating expenses exceeded Council income. On October 14, 1989, when debtor's last nine units were sold, there was an unpaid water bill of $7,183.47. A new Condo Council was elected on October 17, 1989. It filed the notice of claim in the amount of $28,275 representing condo fees for the nine units held by the debtor from March 1, 1986, to October 14, 1989.

The debtor's confirmed plan treated the Condo Council as a Class C creditor entitled to all accrued but unpaid condo charges, if any, that are liens upon units owned by the debtor. The present Council contends that the amount claimed is a lien against the debtor's nine units and the liens attached to the proceeds of sale.

### Council's Claim is Not a Lien Under Delaware Law

■ Council's argument is based upon the following language in debtor's Code of Regulations:

All assessments determined by action of Council, whether regular, additional or special or limited, shall be separate, distinct, and personal liability of the unit owner, AND A LIEN AND CHARGE against the unit at and from the time each assessment is made and levied by the Council and due and payable to the Association. (emphasis added) 1880 Superfine Lane Condominium Code of Regulations, Section 6(b)

The debtor by filing its Declaration and Code submitted the 1880 Superfine complex to the provisions of the Delaware Unit Property Act. 25 *Del.C.* § 2201 *et seq.*

---

1. Declaration, Deed Book 283, p. 136; Code, Deed Book 283, p. 163; Amendment to Declaration, Deed Book, 303, p. 108.

The Act establishes the rights and interests that govern the property so submitted. *Council of Unit Owners v. Realty Growth Investors,* Del.Ch., 436 A.2d 1268 (1981), *aff'd,* Del.Supr., 453 A.2d 450 (1982).

The parties have not cited nor has the court found any Delaware case interpreting Sections 2233 and 2234 of the Act other than one [2] not relevant to the issue here. Thus, the court looks to the plain language and common sense meaning of the Delaware statute.

The pertinent provisions of the Act provide:

*All sums assessed by resolutions duly adopted by the council* against any unit for the share of common expenses chargeable to that unit shall constitute the personal liability of the owner of the unit so assessed and shall ... constitute a charge against such unit which *shall be enforceable as provided in the next section.* 25 *Del.C.* § 2233 (emphasis added) [a]ny charge assessed against a unit *may be enforced by an action at law by the council* ... provided that *each action, when filed,* shall refer to this chapter and to the unit against which the assessment is made and the owner thereof. *Any judgment against a unit and its owner shall be enforceable in the same manner as is otherwise provided by law.* 25 *Del.C.* § 2234 (emphasis added).

Although the Chalfont Council did not pass a formal resolution assessing a specific amount per unit, it memorialized and gave notice of unit charges to affected parties. Its price list on units for sale, in effect from 1985 when the first unit was sold, together with the Council's yearly budget which reflected an unchanging monthly assessment per type of unit was distributed to all owners of units.

Despite having concluded that specific sums were properly assessed against all units, the Council cannot recover the assessments on a lien theory because the assessments against units owned by the

debtor were never reduced to a judgment so as to create a lien under Delaware law.

### Notice of Claim

▇ The Council also argues that the terms of the confirmed plan did not require a proof of claim but that its notice satisfies formal requirements if one is required. The notice is sufficient to satisfy formal requirements. It reflects the Council's intention to hold the debtor liable in the sum of $28,275 for monthly assessments against the nine units it owned between May 1986 and October 1989. *In re Stern,* 70 B.R. 472, 476 (Bankr.E.D.Pa.1987) (*citing In re Guardian Mortgage Investors,* 15 B.R. 284, 285 (M.D.Fla.1981)).

Wilmington Trust counters with the argument that the Council was listed in debtor's schedules as an undisputed unsecured creditor and absent filing a proof of claim before the bar date cannot assert a different claim. The Council's notice of claim covers a period before as well as after the bankruptcy filing.

### Pre and Post–Petition Debt

▇ In any bankruptcy case, there is a delineation between pre and post-petition debt. Proofs of claim for pre-petition debt are required before a stated bar date in a Chapter 11 case if a creditor is listed in debtor's schedules as holding a disputed claim. If it is a claim for administrative expenses only, a request for payment is required. 11 U.S.C. § 503.

The debtor had an obligation to pay to the Council the charges accruing monthly on the nine units which it owned from March 1, 1986 until they were sold on October 14, 1989. The debtor both before and after filing its bankruptcy case was unable to do this. However, the Chalfonts recognizing the debtor's responsibility for the assessments paid Council expenses totaling $20,882 without going through the formality of loaning the money to the debtor to pay to the Council. The record does not reflect when these monies were advanced.

---

**2.** *Star of the Sea Assoc. of Owners, Inc. v. Dayton,* No. 85–A–JL5, slip op., Chandler, J., 1986

WL 9022 (Del.Super. Aug. 13, 1986).

*Debtor's Plan*

The debtor's confirmed plan was to be implemented by the sale of debtor's remaining nine units free and clear of liens and encumbrances with liens attaching to proceeds in order of priority except as provided in the plan.

Wilmington Trust Company was to be paid the net proceeds upon the sale of each unit after payment of all Class A (administrative expenses), Class B (taxes) and Class C (condo charges that are liens) claims.

The debtor was authorized in Article IX(e)(3) of its plan to pay as costs and expenses of administration:

\*    \*    \*    \*    \*    \*

current real estate tax prorations, past due and pro-rated condominium assessments, if any,

and

any other settlement costs normally encountered in real estate closings in the State of Delaware in properties of this type not to exceed $150.

*Council's Claim*

The Council cannot recover as a Class C creditor under the terms of the plan which provides for payment of condo charges, if any, that are liens. Despite whatever understanding the Chalfont Council might have attributed to the meaning and effect of "lien and charge" in the Code of Regulations, it did not, nor did the present Council, obtain a judgment so as to perfect a lien under Delaware law. Consequently, its notice of a right to payment as a Class C creditor must be disallowed. Having reached that conclusion, there is no reason to discuss the excusable neglect arguments.

■ Moreover, even if this notice were to be treated as a proof of claim allowed under an excusable neglect theory, it would have to be disallowed as to the amount claimed. At most, the present Council would be entitled only to the difference between $20,898.90 and $28,275 or $7,376.10.

■ The Council's notice of claim is adequate to serve as a request for payment of administrative expenses. It is not entitled to a windfall. The payments made by the Chalfonts individually on behalf of debtor in meeting Council expenses must be deducted from the amount claimed. Thus, the Council can recover the difference of $7,376.10 under Article IX(e)(3) of its plan. The plan reflects debtor's intent to meet its Council obligations, that is, payment of *all* properly assessed condominium charges before distribution of any proceeds to WTC upon the sale of debtor's remaining nine units. The parties are bound by the terms of the confirmed plan. *See In re Szostek*, 886 F.2d 1405 (3d Cir.1989).

An order in accordance with this Memorandum Opinion is attached.

### ORDER

AND NOW, December 11, 1990, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT there shall be distributed from the proceeds of sale of debtor's nine units in accordance with Article IX(e)(3) of debtor's confirmed plan the sum of $7,376.10 to 1880 Superfine Lane Condominium Council representing the balance due the Council for condominium charges against debtor's nine units sold at public auction October 14, 1989.