**In re Gerald Clifton YORK, Jr. and Arlene York, Debtors.**

**Educational Credit Management Corporation, Movant,**

v.

**Gerald Clifton York, Jr. and Arlene York, Respondents.**

**No. 99–1066 PJW, 32.**

United States Bankruptcy Court, D. Delaware.

July 25, 2000.

As Amended Aug. 16, 2000.

William F. Jaworski, Jr., Dover, DE, for the debtors.

Rand L. Gelber, Rockville, MD, Michael Vild, Wilmington, DE, for Educational Credit Management Corporation.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

Gerald Clifton York, Jr. and Arlene York (hereafter "Debtors") filed a voluntary petition under Chapter 13 of the U.S. Bankruptcy Code on May 10, 1999. The Debtors' schedules include two student loan debts. On the filing date, the U.S. Department of Education held promissory notes evidencing the debt but was in the process of transferring them to Educational Credit Management Corporation (hereafter "ECMC"). The Debtors filed a plan. Notice was served on all creditors that the deadline to file and serve objections to confirmation was no later than seven days prior to the hearing date. The hearing

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes the court's findings of fact and conclusion of law.

date for the confirmation of the plan was set for and conducted on, June 28, 1999. ECMC was assigned the Debtors' promissory notes on July 1, 1999. Thus, on the confirmation date, the Department of Education was the creditor which held the claims at issue.

On the day of the confirmation hearing, the Debtors filed and presented an amended plan. The amended plan revised the payment schedule from $590.85 for sixty months to $433.76 for month one and $590.85 for months two through sixty. Consistent with the first plan, the amended plan in Section 2(a) "Priority Taxes" provided that, "Upon completion of the plan and without objection from the U.S. Department of Education, interest on this student loan will be discharged." On June 28, 1999, the plan having met the requirements of 11 U.S.C. § 1322 and all creditors having received notice of the commencement of the case with a copy of the Debtors' plan and having an opportunity to be heard, the plan was confirmed. No objections to confirmation were filed by the Department of Education or ECMC. No appeal of the confirmation order was filed. ECMC timely filed a proof of claim on July 6, 1999, for debts incurred through two student loans which carried eight percent interest per annum.

The Debtors filed a Motion to Modify the Chapter 13 Plan on September 10, 1999. In the proposed modified plan, the Debtors surrender their Ford Contour and lower their plan payment to $433.76 for month one, $590.00 for months two and three, and $140.00 per month for months four through sixty. The proposed modified plan affected only one creditor, Household Automotive Finance Corporation. ECMC objects to the modified plan and argues that the "undue hardship" requirement of § 523(a)(8) has not been met and, therefore, the discharge of post-petition interest (a provision which remains unchanged from the confirmed plan) is prohibited by law. This court disagrees. Although under § 523(a)(8), student loans are not dischargeable unless the debtor proves "undue hardship," the conflict in the case at bar is not whether post-petition interest on the student loan is dischargeable absent adversary action but whether § 1327 and the policy of finality of confirmation orders precludes ECMC from objecting to its unaltered treatment in a modified plan.[2]

The Third Circuit has expressed a strong policy for finality in dealing with plans of reorganization. "The finality of the terms of a Chapter 13 [plan] and its treatment of claims upon confirmation is well established." *In re Perrin,* 233 B.R. 71, 78 (Bankr.D.N.J.1991), citing *In re Fesq,* 153 F.3d 113 (3d Cir.1998), *cert. denied,* 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999); *In re Szostek,* 886 F.2d 1405, 1408 (3d Cir.1989); *In re Penn Central Transport. Co.,* 771 F.2d 762 (3d Cir. 1985), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985). The Supreme Court addressed the finality of confirmed plans and held that "the finality of the bankruptcy confirmation order barred the creditor from litigating its claim." *In re Szostek,* 886 F.2d at 1409. *See Stoll v.*

---

2. This case is distinguishable from the facts presented in *Leeper v. PHEAA (In re Leeper),* 49 F.3d 98 (3d Cir.1995), where the debtors sought an order that PHEAA was not entitled to post-petition interest that accrued during the pendency of the bankruptcy proceedings and where neither debtor would be able to pay the student loan debts in full in the sixty months of the Chapter 13 plan term. In *Leeper,* the court held that the debtors were liable for the amount of unpaid post-petition interest which accrued on the unpaid principle of the student loan and that PHEAA could collect the balance of the amount owed on its bankruptcy claims at the end of the sixty month period. In the matter before the court, the goal of the plan is to provide for full payment of the student loan debt, the plan includes a specific provision addressing the interest, the creditors failed to object or appeal the confirmation order, the proposed modification does not alter ECMC's status, and the plan is still in progress. This court must only determine whether ECMC is barred from challenging its treatment merely because the Debtors seek to modify an unrelated provision.

*Gottlieb,* 305 U.S. 165, 171–72, 59 S.Ct. 134, 83 L.Ed. 104 (1938). The Supreme Court reaffirmed its position in *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The court in *In re Pardee,* 218 B.R. 916 (9th Cir. BAP 1998), aff'd 193 F.3d 1083 (9th Cir.1999), cited *Celotex,* as "enforc[ing] the basic principle enunciated in *Stoll* that a final order that is not appealed cannot be collaterally attacked in a later proceeding even if the order was entered in error." *In re Pardee,* 218 B.R. at 924.

Moreover, the Third Circuit has stated that this "policy of finality" overrides possible deficiencies within the confirmed plan, "[A]lthough prior to confirmation the bankruptcy court and trustee do have a responsibility to verify that a Chapter 13 plan complies with the Bankruptcy Code provisions, after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code." *In re Szostek,* 886 F.2d at 1406.

■ "Under § 1327, a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek,* 886 F.2d at 1408. *See also In re Bonanno,* 78 B.R. 52, 55 (Bankr.E.D.Pa.1987). The Bankruptcy Code provides that a final order confirming a debtor's Chapter 13 plan can only be revoked by a showing of fraud. *In re Fesq,* 153 F.3d 113, 115 (3d Cir.1998); *see* 11 U.S.C. § 1330(a). In *Fesq,* the creditor of a bankrupt debtor argued that, while the Code only specifies fraud as a means to revoke a Chapter 13 plan, bankruptcy courts have the power to revoke confirmation orders which are the consequence of mistake, inadvertence or excusable neglect. *Id.* at 115. The Third Circuit looked to congressional intent and the language of § 1330 and disagreed, stating, "[O]ur *In re Szostek* .... decision has treated fraud as the only predicate that could justify revoking a confirmation order

under Section 1330." *Id.* at 118. The court held, "Over and above the plain thrust of the statutory language, we conclude that Congress intended that reading of Section 1330(a) because it protects the finality of Chapter 13 confirmation orders. As we have previously recognized, Congress established finality as an important goal of bankruptcy law." *Id.* at 119.

■ In the matter before us, Educational Credit Management Corporation (hereinafter "ECMC") has not alleged fraud. ECMC argues that the interest on a nondischargeable debt that will be paid in full through the confirmed plan cannot be discharged upon the Debtors' successful completion of the plan even though a specific provision in the confirmed plan provides for its discharge. The language of the provision states, "Upon confirmation of the plan and *without objection* from the U.S. Department of Education, interest on this student loan shall be discharged." (Emphasis added.) ECMC cites to case law which supports its contention that postpetition interest on a nondischargeable student loan is likewise nondischargeable. *See In re Bell,* 236 B.R. 426 (N.D.Ala. 1999). However, the case at bar is different than the issues presented to the court in the *Bell* decision. In *Bell,* the bankruptcy court reduced the debtors' claim from $3448.35 to $2000.00 and on appeal, the district court found that the reduction in the claim did not result in a discharge for any sums in excess of the allowed amount. *Id.* at 428. In the matter before us, the Debtors have not completed their plan payments, the Debtors have not received a discharge, and this court did not order a reduction in ECMC's proof of claim. In fact, the Debtors' confirmed plan provides repayment of the student loan debt in the amount of $6606.66 which is virtually identical to ECMC's proof of claim.[3] In order to understand the matter

---

3. There is a discrepancy between the Debtors, ECMC's main legal department, and its local counsel as to the amount owed on the two

outstanding student loans. The Debtors' confirmed plan provides $6606.66 for the student loan debt. ECMC's main legal department

before us, it is incumbent to recognize the difference between the issue in *Bell* and the case at bar. The *Bell* court had to determine whether the bankruptcy court's order discharged the student loan debt and whether the general discharge effected ECMC's ability to collect the outstanding balance due after the debtor received her discharge. *Id.* at 428–49. The issue before this court is whether ECMC can object to its treatment in the Debtors' confirmed plan where the Debtors seek to modify the plan and the modification does not address, affect, or change ECMC's position. Therefore, *Bell* is inapposite to this case.

Additionally, ECMC argues that the proposed modified plan does not comply with § 1325 of the Bankruptcy Code, citing specifically to § 1325(a)(1) and (3). The Third Circuit has addressed objections to confirmed plans predicated on § 1325 violations. The analysis begins with a reference to the binding power of § 1327, which is evident in the language of the statute. Section 1327 states in relevant part, "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." *See* 11 U.S.C. § 1327(a). One leading commentator has addressed § 1327 as it relates to other issues within confirmation orders as follows:

> ... the binding effect of a Chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with sections 1322 and 1325 of the Bankruptcy Code .... a creditor may not after confirmation assert that the plan was not filed in good faith as required by section 1325(a)(3); that the creditor should have been paid interest; .... or that the plan is otherwise inconsistent with the Code in violation of .... section 1325(a)(1).

*See* 8 Colliers on Bankruptcy, § 1327.02[1][c] (15th ed.2000). This court holds in accordance with other Third Circuit decisions, which have concluded that, "[I]f the conditions of § 1325(a) are not met, although the requirements of § 1322 are fulfilled, the court has the discretion to confirm the plan. If Congress had intended for § 1325(a) to be mandatory, it could have included that requirement with the requirements already listed in § 1322." *See Szostek,* 886 F.2d at 1411.

■■■ The Debtors' original confirmed plan and the proposed modified plan meet the requirements set forth in § 1322 of the Bankruptcy Code. Even in circumstances where some of the conditions set forth in § 1325 may not have been met, this court still has the discretion to confirm the plan. *See Szostek,* 886 F.2d at 1411. In addition, absent any timely objections, a court can confirm a plan which includes a provision that determines the dischargeability of a debt, even though the request for the determination did not follow correct procedure. *See In re Andersen,* 179 F.3d 1253 (10th Cir.1999); *In re Pardee,* 218 B.R. 916 (9th Cir. BAP 1998), *aff'd* 193 F.3d 1083 (9th Cir.1999). Here, the creditor, through its assignor, received specific no-

asserts in its objection to the Modified Plan filed on October 14, 1999 that it holds two notes, one for $497.05 and the other for $6624.19, both reflecting the principal, pre-petition interest and collection costs, for a total owed of $7121.24. This objection, however, includes post-petition interest accrued through October 12, 1999. ECMC's local counsel states that two proofs of claim were filed, one filed July 6, 1999, against Arlene York in the amount of $6496.51, and the other filed July 12, 1999, against Gerald York, Jr. in the amount of $485.43, for a total of $6981.94. Both include pre-petition interest and collection costs. Although the amount specified in the plan differs from the proofs of claim, the most recently filed proof of claim will govern as to the amount owed, absent objection by the Debtors or Trustee. To the extent the plan is underfunded to pay the educational loans in full, the Debtors must raise the plan payment to achieve the goal of full payment.

tice of the Debtors' request to discharge post-petition interest on its debt. It had the opportunity to object, yet it did nothing to assert an objection. Therefore, contrary to ECMC's assertion, the provision is not forbidden by law.

■ The creditor could have pursued an objection that the Debtors' plan did not meet the standards for confirmation under § 1325. Likewise, it could have appealed the confirmation order. As an assignee of the notes, ECMC has no rights or entitlement greater than the Department of Education, as the assignor, had to give. The Department of Education failed to contest the nondischargeability provision in the plan by not timely objecting to its treatment and by not appealing the order confirming the plan. ECMC, as assignee, is bound by that decision of its assignor.[4]

ECMC argues, alternatively, that because the matter arises by virtue of Debtors' Motion to Modify the Chapter 13 Plan, the plan is reopened for objections by all creditors, even those whose treatment is not changed by the modification. This court disagrees. The Third Circuit's policy of finality and the binding power of § 1327 abrogates ECMC's ability to object.[5] If anything, the proposed modification, whereby the Debtors surrender a vehicle and lower the monthly plan payments, enhances ECMC's position and the potential for successful plan completion. With regard to this issue, ECMC cites *In re Stevens*, 236 B.R. 350 (Bankr.E.D.Va.

1999). However, this case is distinguishable from *Stevens*. In *Stevens*, the Chapter 13 debtor's first plan was denied confirmation by the court. *Id.* at 351. The first modified plan was confirmed without objection on October 22, 1998, and the proposed second modified plan was filed October 23, 1998. *Id.* at 351. ECMC's untimely objection was filed December 4, 1998, after the thirty day period to object expired. *Id.* at 351. ECMC objected to the provision, which was in the first modified confirmed plan and the proposed second modified plan, that stated: "The debtor hereby moves the Court for a Hardship Discharge Pursuant to 11 U.S.C. § 523(a)(8)(B). The Debtor asserts that excepting such debt from discharge under 11 U.S.C. § 523(a)(8) will impose an undue [hardship] on the debtor and the debtor's dependents." *Id.* at 351. Debtors in the case at bar do not go so far. Debtors' plan provides that the principal and pre-petition interest on the student loans be paid in full. In addition, there is no mention of § 523(a)(8) or a request for an "undue hardship" discharge within the Debtors' confirmed plan or proposed modified plan. Moreover, in *Stevens*, the court stated that, "it is this court's practice to consider the confirmability of a chapter 13 plan on the merits of the plan whether or not an objection is timely, and the court therefore considers the objection." *Id.* at 351. This court is not bound by the practice of bankruptcy

4. We are not called on to decide whether ECMC would be entitled to post-petition interest on this prior claim, which is being paid in full by the plan. However, we recognize that whether ECMC would be able to prove a claim for accrued post-petition interest, where such interest would not be required to be paid so as to meet the liquidation alternative test, is itself an issue that would require examination. In this case, the Debtors' plan and schedules shows that there is not sufficient equity in assets to require post-petition interest on priority claims. One of ECMC's proofs of claim lists the status as "unsecured priority." The other claims priority status. Nonetheless, this is not the issue before this court. The issue in this case is whether

ECMC can object to its treatment in the Debtors' confirmed plan where the Debtors seek to modify the plan and the modification does not address, affect, or change ECMC's position.

5. Whether ECMC's ability to object would override the Third Circuit's policy of finality and § 1327 under different or unique circumstances has not been raised. Therefore, based on the facts presented in this case, where the plan is paying the principal and pre-petition interest in full and where neither the Department of Education nor ECMC objected to the confirmation order, this court does not look to the issue of nondischargeability, as do many of the other cases ECMC cites, because res judicata bars any further analysis.

courts in the Fourth Circuit, and furthermore, we have cited to substantial Third Circuit precedent which favors the policy of finality and the binding power of § 1327. *See In re Szostek,* 886 F.2d 1405 (3d Cir.1989); *In re Bonanno,* 78 B.R. 52 (Bankr.E.D.Pa.1987). Likewise, we agree with the proposition that:

> ... if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

*See Szostek* 886 F.2d at 1409, *quoting, In re Penn Central Transp. Co.,* 771 F.2d 762, 767 (3d Cir.1985).

The case at bar is complementary to *In re Eason,* 178 B.R. 908 (Bankr.M.D.Ga. 1994). In *Eason,* the debtors, Chapter 13 plan provided for zero percent interest on the IRS' claim. *Id.* at 909. The IRS did not object or appeal and the debtors' plan was confirmed. *Id.* at 910. When the debtors later moved to modify the plan without altering the treatment or status of the IRS, the IRS challenged the provision providing for zero percent interest. *Id.* The court in *Eason* held that, "the proposed modification reaffirms the treatment of the IRS ... the binding effect of § 1327 of the Code, as well as the doctrine of res judicata, preclude the IRS from objecting now." *Id.* at 913–14. As a policy matter, the court in *Eason* addressed another reason to overrule the objection, stating that, "judicial economy demands reducing needless or repetitive litigation of issues that could have been decided at the confirmation hearing." *Id.* at 914.

This court concludes, on the facts of this case, that ECMC is bound by the plan. To allow ECMC to object to a proposed modified confirmed plan in which Debtors seek to change only a provision unrelated to ECMC jeopardizes established precedent. *See, e.g., Szostek* 886 F.2d 1405, which states:

> to hold otherwise would be to endorse the proposition that a creditor may sit idly by, not participate in any manner in the formulation and adoption of the plan in reorganization and thereafter, subsequent to the adoption of the plan, raise a challenge for the first time. Adoption of [this] approach would effectively place all reorganization plans at risk in terms of reliance and finality.

*Szostek,* 886 F.2d at 1413, quoting *In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 1266 (10th Cir.1988).

Therefore, upon consideration of the foregoing, this court finds that res judicata precludes ECMC from objecting to Debtors' proposed modified plan pursuant to which ECMC's treatment is unchanged from the confirmed plan. ECMC, through its assignor the U.S. Department of Education, had the opportunity and responsibility to object to its treatment in the confirmed plan, at its confirmation hearing. Having failed to do so, and having failed to appeal the confirmation order, the creditor is without the remedy it seeks.